## Girard Trust Company *v.* Philadelphia, Appellant.

Argued January 16, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Abraham Wernick,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for City of Philadelphia, appellant.

*C. Brewster Rhoads,* for School District of Philadelphia.

*Joseph H. Lieberman,* for Board of Revision of Taxes.

*Sanford D. Beecher,* with him *Claude C. Smith* and *Duane, Morris & Heckscher,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 24, 1952:

Stated as concisely as possible, the question is whether a mortgage which is merely security for the

payment of accompanying bonds is subject to the personal property tax.

In 1924 the Penn Athletic Club conveyed its clubhouse at the northeast corner of 18th and Locust Streets, Philadelphia to one C. Benton Cooper, who thereupon executed to the Girard Trust Company, as Trustee, a mortgage indenture to secure an authorized issue of first mortgage bonds. The bonds were issued to various purchasers. It is not necessary for present purposes to recount in detail the checkered and somewhat tumultuous history of the property, the bond issue and the mortgage. Suffice it to say that Cooper conveyed the premises, under and subject to the mortgage, to Rittenhouse Square Corporation, which, some fifteen years later, deeded the property, under and subject to the mortgage, to the Penn Athletic Club, and in 1942, default having occurred in the payment of interest on the bonds, the latter conveyed the premises to the Girard Trust Company, Trustee, under and subject to the mortgage, the parties expressly stipulating that the lien of the mortgage was to remain unimpaired and the debt which it secured to continue as a valid and subsisting obligation of the original obligor, C. Benton Cooper.* In 1948 the Girard Trust Company, Trustee, sold and conveyed the premises free and clear of all liens, and the mortgage was thereupon marked satisfied of record.

The Board of Revision of Taxes made an assessment for each of the years 1942 to 1948 inclusive for county personal property taxes against the Girard Trust Company, Trustee, under the Act of June 17, 1913, P. L. 507, as amended, and also an assessment for the year

---

* Merger is always a question of intention: *Fair Oaks Building and Loan Association v. Kahler*, 320 Pa. 245, 249, 181 A. 779, 780; *Naffah v. City Deposit Bank*, 343 Pa. 348, 352, 23 A. 2d 340, 342.

1948 for the school personal property tax under the Act of June 20, 1947, P. L. 733, section 2. The Girard Trust Company, Trustee, appealed to the Court of Common Pleas from the action of the Board of Revision of Taxes in making the assessments on the ground that only the bondholders were liable for the payment of these taxes. The court sustained the appeals and set aside the assessments, and from its decree so holding the City of Philadelphia, the School District. of Philadelphia, and the Board of Revision of Taxes, now appeal to this court.

The County Personal Property Tax Act of June 17, 1913, P. L. 507, as amended, provides that "All personal property of the classes hereinafter enumerated, owned, held or possessed by any resident, . . . whether such personal property be owned, held, or possessed by such resident in his, her, their, or its own right, or as active trustee, agent, attorney-in-fact, or in any other capacity, . . . for the use, benefit, or advantage of any other person, . . . is hereby made taxable annually for county purposes, and, in cities coextensive with counties, for city and county purposes, at the rate of four mills on each dollar of the value thereof, . . .; that is to say, —All mortgages; all moneys owing by solvent debtors, whether by promissory note, or penal or single bill, bond, or judgment; . . . all other monied capital owing to individual citizens of the State: . . . ." The Personal Property Tax Act of June 20, 1947, P. L. 733, section 2, which provides a similar tax for school districts of the first class, may be regarded as containing substantially this same language.

Under the facts stipulated in the present record the Girard Trust Company, which took possession of the mortgaged premises when the bond interest was in default, was undoubtedly an "active trustee", but the question is whether the mortgage which it held as trus-

tee for the bondholders was property subject to the personal property taxes imposed by these statutes.

In *Meigs v. Bunting,* 141 Pa. 233, 239, 21 A. 588, 589, it was said that "A bond and mortgage are distinct and separate securities, though for the same debt. As against the rights of third parties, payment in fact of either extinguishes the debt, and therefore satisfies the other: . . . . And, even between the parties, the two securities are so far parts of the same transaction that the satisfaction of one is presumed to be payment of the debt and therefore to include the satisfaction of the other, and the burden of proof is on the creditor to show the contrary."

The theory in our state has always been that a mortgage is merely collateral for the payment of some primary obligation, usually a bond: *Beaver County Building & Loan Association v. Winowich,* 323 Pa. 483, 489, 187 A. 481, 484. Of course there may be mortgages not accompanied by any other evidence of indebtedness but which constitute in and of themselves both the obligation and the conveyance of the property intended to secure it. The present case is not concerned with such a situation. Even if a mortgage contains an express covenant to pay the debt represented by an accompanying bond or issue of bonds such promise would be merely ancillary to, and in support of, the accompanying original obligation, and its major function would still be merely to furnish collateral security for the performance of the terms of that obligation.

The problem arises, then, what interpretation is to be placed upon the provision in these statutes for a tax on "all mortgages" in view of the fact that the tax is also on "all moneys owing by solvent debtors, whether by promissory note, or . . . bond," etc. Certainly, since a mortgage and an accompanying bond represent only a single debt, it could not have been the intention

of the legislature that the four mills tax provided in the acts should be levied on the bond and a like tax also on the mortgage securing its payment. Every presumption is against the legislative intention to impose double taxation, and never has it been suggested in theory, or adopted in practice, that, where a mortgage secures an accompanying bond, each should be subject to the tax. The question arises in the present instance only because, instead of the bond and mortgage being owned, as usually, by one and the same person, the mortgage is held by the Trustee and the bonds secured thereby by numerous individual owners. Which, then, is taxable, the mortgage or the bonds? Reading the statutes in their entireties, it is clear that the tax therein imposed is not intended to be on a mere lien or collateral security for a debt but on the debt itself, on "monied capital owing to individual citizens of the State". The conclusion is inevitable that the term *"all mortgages"* must be construed as meaning *"all indebtedness secured by mortgage."* It is urged by appellants that the word "all" is a term which includes everything and excludes nothing and therefore must be held to embrace mortgages of every kind and description, whether or not securing other primary obligations or evidences of indebtedness, and it is true that the Statutory Construction Act of May 28, 1937, P. L. 1019, section 51, provides that "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." But cases arise where, as here, consideration must be given to the context in determining whether a given word in a law is used in its literal signification or, on the contrary, in a limited sense as indicated by other terms and provisions of the act. In *United States v. Kirby,* 7 Wallace (74 U. S.) 482, 486, 487, it was said by Mr. Justice FIELD: "All laws

should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." And in *Church of the Holy Trinity v. United States,* 143 U. S. 457, 459, Mr. Justice BREWER said: "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act." Thus, in *Guessefeldt v. Mc-Grath, Attorney General,* —— U. S. —— (opinion handed down January 28, 1952), an act of Congress provided that "No property . . . of . . . *any national* of either such country [Germany or Japan] . . . shall be returned to former owners thereof . . . ." It was ruled, notwithstanding the inclusiveness of the term *"any* national",' that it should be held applicable only to *some* German "nationals", namely, those who were enemies.

In *Philadelphia Company for Guaranteeing Mortgages v. Guaranty Realty Co.,* 78 Pa. Superior Ct. 258, (affirmed 275 Pa. 18, 118 A. 543) the question was whether a corporation which had assumed payment of

an issue of bonds secured by a mortgage on its real estate was obliged by the amendment of July 15, 1919, P. L. 955, to section 17 of the Act of June 17, 1913, P. L. 507, to withhold the four mills personal property tax out of the interest payable to the bondholders. It was held that it was so liable, and, therefore, the mortgage was not taxable under section 1 of the act, even though that section made *"all mortgages"* taxable thereunder. In so holding the court said (pp. 263, 264) through Judge (later President Judge) KELLER that "it was never disputed that . . . the mortgages returned to the local authorities for assessment and taxation on their actual value comprised only mortgages which were not taxable as such corporate indebtedness. . . . The term 'mortgage' as used in the acts imposing a tax on personal property, clearly means 'mortgage indebtedness'."

The case of *Cumberland County v. Lemoyne Trust Company,* 318 Pa. 85, 178 A. 32, upon which appellants largely rely, is clearly distinguishable. There the Trust Company, as Trustee, held a pool of bonds secured by individual mortgages, against which it issued participation certificates to various purchasers. It was held that the Trustee, not the individual owners of the certificates, was liable for the county personal property tax, but this was because it was the holder not only of the mortgages but also of the bonds which were the primary obligation or evidence of indebtedness. In the present instance the bonds were not held by the Girard Trust Company, Trustee, but by individual owners, and accordingly it is they, not the Trustee, who are liable for the payment of the tax.

The decree is affirmed; costs to be paid by appellants.

DISSENTING OPINION BY MR. JUSTICE BELL:

The Personal Property Tax Act of June 17, 1913, §1, P. L. 507, as amended, imposes a tax upon all personal property of the classes hereinafter enumerated —*"all mortgages*;* all moneys owing by solvent debtors, whether by promissory note, or penal or single bill, *bond* or judgment; . . . all loans issued by any corporation . . . including . . . loans secured by *bonds* or any other form of certificate or evidence of indebtedness . . .". The question here involved: Is a trust mortgage subject to the tax; or are the bonds issued under the trust mortgage indenture and held by various individual bond owners subject to the tax?

The first and most important class of personal property taxed is "all mortgages". *"All mortgages"* means *"all mortgages"*—it would be impossible to find clearer or more comprehensive language. The majority point out that later on in the same section the statute also taxes "all moneys owing by solvent debtors whether by . . . bond"; but fails to add or note ". . . all loans issued by any corporation . . . including . . . loans secured by bonds . . .". The Act is not skillfully drawn and obviously attempts to catch and include in the tax all personal property mentioned. If there be, as there seems to be, some overlapping or duplication it would appear to primarily concern bonds; and the majority could if necessary have just as reasonably and more appropriately construed the meaning of "bonds", to bonds not heretofore mentioned or bonds evidencing a loan or debt not otherwise taxed.

Furthermore, *this particular mortgage contained an express covenant to pay* the principal and interest so that it was not like the ordinary mortgage which usually accompanies a bond given in connection with a real

---

* Italics throughout, ours.

estate loan. This mortgage (if it be material) is much more like a mortgage against which participation certificates are issued and which was held to be subject to the tax in *Cumberland County v. Lemoyne Trust Co.,* 318 Pa. 85, 97, 98, 178 A. 32. In that case the Court said: ". . . it would seem that mortgages of the type involved would be taxable in the hands of the trust company even though the certificate holders were individuals resident outside the county or even outside the State: Com. v. Phila. Mortgage & Trust Co., 15 Dauphin 96, (appealed to the Supreme Court to No. 20, May Term, 1912, and non prossed). 'Property held in trust should be assessed to the trustee where he resides': Guthrie v. Ry., 158 Pa. 433.

"We find no merit in the contention that the tax should be assessed against the individual holders. As we have stated, the Act of 1913, section 1, seems manifestly to make the mortgages taxable in the hands of the trust company. Further, a consideration of the facility of administering the Act of 1913 seems to require assessment of the tax against the trust company. . . . The taxing authority would experience great difficulty in ascertaining the identity and residence of the various holders of the certificates. To assess the tax against the holders of the certificates seems contrary to the spirit and purpose of the various acts, including the Act of 1913, which require the recorder to obtain accurately the residence of all persons to whom interest is payable on recorded securities and to forward periodically such information to the taxing authority."

Even if the *Cumberland County v. Lemoyne Trust Co.* case, supra, were not controlling, the fact remains that it is the province and the duty of a court to construe and not to reform a tax statute. Where the language of a tax act is clear, a court has no right to ig-

nore it and to substitute for the clear and mandatory language of the statute its guess as to the supposed, but unexpressed, legislative intent.

Section 51 of Art. IV of the Statutory Construction Act of May 28, 1937, P. L. 1019, clearly answers the majority opinion: "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit". No matter in what spirit the act is approached you cannot get away from its clear and unambiguous language —"All mortgages"; and that clearly means "all mortgages", including mortgages held by an active trustee for various bondholders.

For these reasons I would reverse the decree of the court below.