## Volpe Appeal

*T. Robert Brennan* and *Brennan & Brennan,* for appellant.

*Mortimer B. Lesher,* school solicitor, for appellee.

BROWN, J., January 30, 1953.—This matter is before the court on appeal by taxpayer appellant, from taxes imposed upon him by the School District of Pittsburgh pursuant to the School Mercantile License Tax Act of June 20, 1947, P. L. 745, as amended, 24 PS §581.1 et seq. Appellant was taxed as a person conducting places of amusement and the measure of tax was the entire gross receipts of the pinball machines and juke boxes owned and installed by him in places as will hereinafter be set forth.

### Findings of Fact

1. Appellant owns coin-operated music boxes known as "juke boxes", and coin-operated mechanical game machines known as "pinball machines"; which he places in stores, restaurants, bars, etc., under oral agreements with the proprietors of the various establishments, hereinafter designated at various "locations" in the City of Pittsburgh.

2. Appellant has entire control over the machines and services them; moves them at his pleasure; and has sole access to the coin receptacles in the machines.

3. The owner or proprietor of the premises upon which these machines are placed supplies the necessary space for the machines and the electric current which is needed for their operation.

4. Appellant owner of the machines can remove them at his pleasure, and the operator or proprietor of the business may at his pleasure move them from place to place in his establishment.

5. The financial arrangements of appellant with the owner or proprietors of the places where the machines are located are as follows:

(a) For pinball machines appellant usually pays one half of the gross coin income, to the location owner or proprietor.

(b) In the case of juke boxes the installation is generally made in three different categories: (1) Appellant is sometimes paid all the income from the music box; (2) the owner and operator of the premises pays appellant a flat weekly or monthly charge as may be agreed upon from time to time, in which event the owner of the business retains the amount of coins deposited in the box; (3) the juke boxes are installed on a percentage basis agreed upon by the parties prior to the installation of the juke boxes.

6. Appellant leases no space in or about the premises wherein the machines are placed, and his right to enter the premises is controlled by the will of the owner or operator of the premises.

### Questions Involved

The issues involved are as follows:

1. Is appellant owner of the pinball machines and juke boxes conducting a place of amusement under the act of assembly hereinabove mentioned?

2. If appellant is taxable as aforesaid what is the measure of the gross business transacted?

### Argument

The very essence of a mercantile tax is that it is an excise tax on the privilege of doing business: Heinz Co. v. Pittsburgh, 170 Pa. Superior Ct. 435; Federal Drug Co. v. Pittsburgh, 358 Pa. 454. The legislature has placed this tax, inter alia, upon those who conduct places of amusement.

There are certain legal guideposts that have been sanctioned by our appellate courts for many years, and we are bound to act in compliance with these principles. The first of these guideposts is that an act of assembly must have a reasonable construction (Com. v. Standard Oil Co., 101 Pa. 119, 146 (1882)); that all laws should receive a sensible construction (Girard Trust Co. v. Philadelphia, 369 Pa. 499, 504, quoting from United States v. Kirby, 74 U. S. 482, 486, 487), and moving from this basic rule we state the following, that tax statutes should receive a strict construction, and in cases of doubt construction should be against the Government (Scranton v. O'Malley Manufacturing Co., 341 Pa. 200, 204; Breitinger v. Philadelphia et al., 363 Pa. 512, 514); it is well settled that tax laws are to be construed most strictly against the Government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law (Husband's Estate, 316 Pa. 361, 369); and that words of a statute imposing tax must be clear and unambiguous and words cannot be extended by implication (Commonwealth v. Repplier Coal Co., 348 Pa. 372, 380).

Furthermore, "a tax assessment must depend for its validity upon a statute, and . . . such statute will not be extended, by construction, to things not directly named or described therein; *there is no taxation by*

*implication*" (United Laundries, Inc., et al. v. Board of Property Assessment Appeals and Review, 161 Pa. Superior Ct. 412, 415) ; a statute should be construed primarily by its language and the legislature is presumed to have used words in their ordinary signification (Commonwealth v. Quaker City Cab Co., 287 Pa. 161) ; and under section 33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, words and phrases must be construed according to their common and approved usage (Breitinger v. Philadelphia, supra). It is well settled that unless property is *clearly* within a taxing statute it is not taxable (Pittsburgh Milk Company v. Pittsburgh et al., 360 Pa. 360, 364; Dorrance's Estate, 333 Pa. 162, 171) ; and the power to impose a tax is given by statute and an act relating thereto embraces such subjects *only* as are *plainly* within its terms:* Commonwealth v. Pennsylvania Water & Power Co., 271 Pa. 456, 458, quoted with approval in Cupp Grocery Company v. Johnstown, 288 Pa. 43, 46.

It should be noted that in the last two decisions just cited the learned court uses different words, but they have the same meaning in that the word "clearly" and the word "plainly" both indicate decisiveness, or a degree of certainty.

Before leaving our guideposts for the present, we state the following from Girard Trust Co. v. Philadelphia, supra, p. 504:

". . . it is true that the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, provides that

---

* This principle of law was early enunciated in our State, e.g., by Lowrie, C. J., in Directors of the Poor of Schuylkill County v. School Directors of North Manheim Township, 42 Pa. 21 (1862), 24, 25, as follows:

"May the school directors tax the county poorhouse situated in their township? Most certainly not, unless there be *some very express enactment authorizing it.*" (Italics supplied.)

'When the words of a law are clear and free from all ambiguity, *the letter of it is not to be disregarded under the pretext of pursuing its spirit*'. But cases arise where, as here, consideration must be given to the context in determining whether a given word in a law is used in its literal signification or, on the contrary, in a limited sense, as indicated by other terms and provisions of the act." (Italics supplied.)

In the instant case the act of assembly under which the school district levied its tax, provides, inter alia:

"Section 1. Definitions. The following words and phrases when used in this act shall have the meanings ascribed to them in this section unless the context clearly indicates a different meaning. . . .

"(7) 'Place of amusement' shall mean *any place* indoors or outdoors where the general public or a limited or selected number thereof may upon payment of an established price attend or engage in any amusement, entertainment, exhibition, contest, recreation, *including among other places*, theatres, opera houses, motion picture houses, amusement parks, stadia, arenas, baseball or football parks or fields, skating rinks, circus or carnival tents or grounds, fair grounds, bowling alleys, billiard or pool rooms, shuffle board rooms, nine or ten pin alleys, riding academies, golf courses, bathing and swimming places, dance halls, tennis courts, archery, rifle or shotgun ranges and other like places. The term does not include any exhibition, amusement, performance or contest conducted by a nonprofit corporation or association organized for religious, charitable or educational purposes.

"Section 3. License Fees. Beginning in the year one thousand nine hundred forty-eight, and annually thereafter, every person desiring to *continue to engage in*, or hereafter to begin to engage in, the business of . . . conducting a restaurant or other place where

food, drink or refreshments are sold, or *place of amusement* in a school district . . . shall . . . procure a mercantile license for his *place* of business . . .

"Section 4. Imposition and Rate of Tax. Every person engaging in any of the following occupations or businesses in any school district of the first class shall pay an annual mercantile license tax at the rate set forth: . . .

"(2) Retail vendors, or dealers in goods, wares and merchandise; all persons engaged in conducting restaurants or other places where food, drink or refreshments are sold, and all *persons conducting places of amusement* at the rate of one (1) mill on each dollar of the volume of the annual gross business transacted by him." (Italics supplied.)

This statute is clear in that the tax is imposed upon persons "conducting places of amusement". Therefore, the question of paramount importance is—is appellant, the taxpayer, conducting a place or places of amusement? If he is, then the place of amusement he is conducting must have a situs—a physical location; it cannot be *"in nubibus"*. If the place cannot be located, a fortiori he is not conducting a place, and consequently cannot be taxed under this statute.

It is true appellant owns the machines, but machines are not places. It would be strained construction indeed to say that the mere fact of ownership, servicing, and/or receiving coins inserted in a machine located in a place wholly and solely conducted by another, makes the owner of the machines a person "conducting a place of amusement". The Bell Telephone Company owns, services and receives the money deposited in its coin-operated telephones, in public, private and semi-private places. Can it be said that the telephone company is therefore conducting, on the premises of each and every one of these places, a place or places of communications? Such a holding would

be as absurd as to hold that appellant is conducting a place of amusement, in the instant case.

In Commonwealth v. Burnside, 30 D. & C. 8, defendant was the owner of juke boxes and placed them in various locations in Lawrence County, on an arrangement similar to that used by appellant in the instant case. Defendant was found not guilty in a nonjury trial for failure to take out an amusement permit as required by the Amusement Tax Act of June 22, 1935, P. L. 429, 72 PS §3168 et seq. Some of the provisions of the Amusement Tax Act were almost identical with the present mercantile tax law: for instance, one section imposed a tax on the privilege of attending or engaging in any amusement; another section provided that it was unlawful for any producer to continue to conduct or after the passage of the act to begin to conduct any form of amusement at any permanent or temporary place of amusement, unless an amusement permit or permits shall have been issued as prescribed by the act. Another section defined "place of amusement" as "any place, indoors or outdoors, where the general public, or a limited or select number thereof, may, upon payment of an established price, attend or engage in any amusement as (therein) defined, including, among others, theatres, etc." The learned judge, in finding defendant not guilty, said (p. 12):

"Defendant was not, in our opinion, engaged in conducting any place of amusement. He merely leased or rented a device to the persons who were conducting the place of amusement . . .";
and on page 13:

"Although we believe our conclusion with reference to defendant's being a producer is decisive, we are also of the opinion that this was not a 'place of amusement' within the meaning of the act."

It is our opinion that Commonwealth v. Burnside, supra, is a parallel case, and while there was some small difference between the Amusement Tax Act under which that case was decided, and the mercantile tax case before us, the difference is so slight it would not make any material difference were we to say that we could decide the issue here upon what was decided in Commonwealth v. Burnside, supra, without further argument.

We turn now to answer another argument raised by the school district, and that is, that appellant is a "concessionaire", and under the mercantile tax regulations, article 2 "To Whom the Act Applies" is found the following: "(b) The Act applies to concessionaires who carry on any occupation or business which is described in any of the classifications listed in (a) above." And "(a) above", under article 2, par. 5, is a restatement of the definition as found in section 1, par. 7, as follows: "Persons conducting places of amusement, etc."

We return to the legal guideposts we have already recited from Commonwealth v. Quaker City Cab Co. and Breitinger v. Philadelphia, supra, that words used in a tax statute are to be given their ordinary signification and must be construed according to their common and approved usage.

The question then arises, is appellant a concessionaire? Our answer is "no". A concessionaire is defined in volume 8, Words and Phrases, permanent ed., p. 512, as follows:

"A 'concessionaire' is the beneficiary of a concession or grant, the lessee or grantee of a concession, as at an amusement park, seaside resort, etc."

The term "concessionaire" has been the subject of definition involved in many cases involving liability for personal injuries. A leading case in this connection

is Rendall et ux. v. Pioneer Hotel, Inc., 71 Ariz. 10, 222 P. 2d 986 (1950), where the following is found as a definition of "concessionaire":

"A concessionaire is necessarily one who is the beneficiary of a concession, that is, a grantee or holder of a concession. A concession is defined by Webster's latest unabridged dictionary as 'a grant or lease of a portion of premises for some specific use or of a right to enter upon premises for some specific purpose as a concession at a fair for a lunch counter'."

The word "concessionaire", taken in its ordinary signification, presumes that first of all a person must hold a "concession"—some specific grant or lease of a portion of the premises for some specific use or a right to enter upon the premises for some specific purpose, as a concession at a fair for a lunch counter.

If we take the word "concessionaire" in its ordinary signification, the definition would not be applicable to the relationship of appellant and the operator of the premises where the machines are placed. We have been unable to find Pennsylvania authorities defining the term "concessionaire", but we have found two cases which will be alluded to hereinafter, wherein the court touched upon the relationship of persons with interests similar to the question before us.

In Adams v. New Kensington, 357 Pa. 557, the court had before it an ordinance of the City of New Kensington regulating the use, operation and possession, providing for the licensing of, fixing license fees for music boxes, juke boxes and mechanical vending machines, and imposing penalties for the violation thereof. Plaintiff owned juke boxes in the City of New Kensington, and bearing upon the relationship of the proprietors of the places where the machines are located, and the plaintiff owner of the boxes, the learned court, at p. 560, said:

"They (the juke boxes) are leased out by plaintiff for operation in various establishments, the receipts being divided between him and the respective lessees; he also supplies the records."

In Phonograph Operators Association v. City of Philadelphia et al., 54 D. & C. 83, the court had before it an ordinance of the City of Philadelphia giving authority to impose taxes on persons, occupations, privileges, etc., within the limits of the city. The city council, under the act, imposed a tax on the use for profit of machines for amusement or entertainment which are operated by the insertion of a coin or token. The Phonograph Operators Association of that city, owners of phonographs electrically operated, which machines produce music from phonograph records by the deposit of a coin in a slot in said machine, brought a bill in equity to restrain the collection of the tax. The learned chancellor in his findings of fact stated:

"(2) The association consists of approximately 47 members, each of whom is required to own not less than five of the said phonographic machines, which are commonly known as 'juke boxes'. . . .

"(4) The said machines or juke boxes are placed by the owners thereof in places known as 'locations', such as cafes and similar enterprises, with the consent of the operator of the location. . . .

"(5) In the said juke box industry, the owner of the juke box or phonographic machine is known as 'owner or operator'; and the operator of the cafe or place of business where the juke box or machine is placed is known as 'the location'."

It is obvious that the legal relationship between the proprietor of the place where the machines are located, and the owner of the machines, is not clearly defined. Learned counsel for the school district claims that the legal relationship is that of landlord and tenant; that the appellant rents space from the landlord,

or store proprietor. The rental paid by the "tenant" instead of being a fixed sum, is a variable sum depending upon the economic productivity of the space so rented, and the verbal lease between the parties is subject to immediate termination, without notice. Here, the proprietor of the business keeps absolute control over the space where the machines are kept. That alone is sufficient to show that the relationship of the parties is not one of landlord and tenant, or in any manner approaching such relationship.

Appellant taxpayer claims that he is a bailor, and the operator of the premises is a bailee. In this connection is should be pointed out that the machine owner, the alleged bailor, keeps absolute control over the machines and there is no delivery to the supposed bailee, which is inconsistent with the relationship of bailor-bailee.

In the case at bar, many legal labels, e.g., bailor-bailee, landlord-tenant, and concessionaire, have been thrown into the stew. The materiality of our discussion of this "stew" has relationship, first, as to who is conducting the place of amusement; and second, is the appellant a concessionaire? We would conclude, as we said in Phonograph Operators' Assoc. v. Philadelphia, supra, that in this industry "the owner of the juke boxes or phonographic machines is known as 'owner or operator'; and the operator of the cafe or place of business where the juke box or machine is placed is known as 'the location' "; and that appellant is not a concessionaire in the ordinary sense of the word, or in common and approved usage. However, if it could be said that appellant is a "concessionaire", such a finding, standing alone, would not bring him within the taxing orbit of this statute, for he must not only be a concessionaire, he must, to be embraced within the act, be a "concessionaire conducting a place or places of amusement".

### Conclusions

The statute is clear and unambiguous in that the tax is upon persons "conducting places of amusement". The taxing body's argument that the owner of the machines is taxable by virtue of the fact that by providing patrons with the opportunity to amuse themselves in any place where his machines are located, makes appellant a person conducting a place of amusement, is not only illogical but problematical, as well as doubtful, and the doubt must be resolved against the taxing body, for under our legal guideposts appellant's operations are not clearly and plainly embraced within the statute. Appellant is not a concessionaire under the common and approved usage of the word, and even if it could be said he is a concessionaire, he is not conducting a place of amusement.

We are prevented by law from extending this tax statute by implication. Therefore, we hold that the tax levied upon appellant is invalid, and it will be so ordered.

The second question raised by appellant, to wit, if appellant is taxable, what measure of the gross income he is liable for thereunder, becomes void, for we have held above that appellant cannot be taxed.