**In re David SCHWARTZ and Rochelle Schwartz, his wife, Debtors.**

**Bankruptcy No. 86–00652G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 29, 1986.

Harold N. Kaplan, Philadelphia, Pa., for the debtors, David Schwartz and Rochelle Schwartz.

Lawrence T. Phelan, Philadelphia, Pa., for the movant, The Money Store.

James J. O'Connell, Philadelphia, Pa., Standing chapter 13 trustee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

■ This case raises an issue of first impression: whether a residential mortgage lender subject to the restrictions of Pennsylvania Act 6 of 1974, 41 P.S. §§ 101 *et seq.*, may obtain counsel fees in excess of $50.00 for legal services incurred, in connection with a motion for relief from stay filed in bankruptcy court under 11 U.S.C. § 362, where those services were provided prior to commencement of a mortgage foreclosure or equivalent legal action. For the reasons set forth below, I hold that, under 41 P.S. § 406(3), the lender may not charge the debtors for counsel fees in excess of $50.00.

### I.

The debtors, David Schwartz and Rochelle Schwartz, filed this chapter 13 bankruptcy case on February 11, 1986. They later filed a chapter 13 plan in which they proposed to cure delinquencies or pay off entirely various claims which are secured by their residential real estate. Their plan also provided for a 100% distribution on unsecured claims. The plan was confirmed by this court on July 15, 1986.

One of the secured claimants, The Money Store, is the holder of a mortgage on the debtors' residence. On September 22, 1986, The Money Store filed a motion for relief from the automatic stay. The Money Store asserted that it was entitled to relief because the debtors had not made all of the postpetition payments under the mortgage it holds against the debtors' residence.[1]

At the hearing on the motion held on November 12, 1986, counsel for the lender and the debtors advised me that they had settled most of the issues between them. They agreed that, after the motion for relief from stay was filed, the debtors paid The Money Store more than $4,300.00.

This sum cured the delinquent postpetition monthly payments for principal, interest, escrow and late charges. However, the lender contended that it was also entitled to $275.00 in attorney's fees for filing the motion for relief from stay. The debtors disputed their liability for any attorney's fees. Both parties requested a ruling on the issue. The Money Store agreed that it would not press for relief from stay pending my ruling on its claim of entitlement for attorney's fees.[2]

Subsequently, counsel for the parties advised the court that they had both erred in some of their factual representations at the hearing. They then filed a joint stipulation of facts and issues. It is now agreed that prior to bankruptcy, the lender sent an Act 6 notice to the debtors; that the debtors failed to exercise their right to cure the mortgage delinquency within 30 days; and that after the expiration of the 30 day notice period, but before the lender initiated any foreclosure or equivalent proceedings, the debtors filed this voluntary petition in bankruptcy.

The parties framed the issue as the "propriety, if any, of awarding a legal fee to movant, and, if answered in the affirmative ... [t]he reasonableness of the requested fee." The parties also informed me that this issue is of greater significance than simply the size of the disputed counsel fees in this case. Counsel represented that this issue recurs frequently in chapter 13 cases and they pressed for a ruling on the matter.

### II.

In order to place the current dispute in context, it is helpful to begin with a brief summary of the legal principles governing the foreclosure of residential mortgages in Pennsylvania. Foreclosure of residential

---

1. The debtors' plan proposed to treat the secured claim held by The Money Store in the manner permitted by 11 U.S.C. § 1322(b)(5).

2. The parties appear to have assumed that if the attorney's fees incurred by the lender in seeking relief from stay may be passed on to debtor, the automatic stay will be conditioned on prompt payment of those fees. *See In re Cosby,* 22 B.R. 682 (Bankr.E.D.Pa.1982) (Cosby I). As explained below in Part V, it is not necessary for me to reach this issue at this time.

mortgages with a principal amount of $50,000.00 or less is governed by statute: Act 6 of 1974, 41 P.S. § 101 *et seq.* By its own terms, one of the principal purposes of Act 6 is to "provid[e] protections to debtors to whom [residential mortgage] loans are made." 41 P.S. § 101, Title of Act. The consumer protection provisions of Act 6 relative to mortgage foreclosure are found primarily in three sections of the statute.

First, 41 P.S. § 403 provides that before accelerating a residential mortgage obligation or commencing "any legal action including mortgage foreclosure to recover under such obligation," the lender must send the debtor at least 30 days in advance, written notice of its intent to take such action. The notice must also clearly and conspicuously inform the debtor, *inter alia*, of the nature of the default, the legal right under Act 6 to cure the default, exactly what performance (including what sum of money, if any) must be tendered to cure the default and the time within which the debtor must cure the default in order to prevent foreclosure or other legal proceedings.

The notice requirements of Act 6 are mandatory. A lender who does not comply with 41 P.S. § 403 may not have access to the courts to enforce the mortgage obligation. Thus, in numerous cases, Pennsylvania courts have granted motions to dismiss complaints for failure to comply with 41 P.S. § 403.[3] Courts have also stricken default judgments on petition of the debtor where the lender did not send an adequate 30 day notice prior to suit.[4] In fact, this court has previously held that a foreclosure sale was invalid because the lender knowingly failed to send the requisite notice to the borrower. *In re Sharp*, 24 B.R. 817 (Bankr.E.D.Pa.1982).

Second, 41 P.S. § 404 provides a residential mortgage debtor with the substantive right to cure a default at any time up to one hour prior to sheriff or other judicial sale of the property.[5] Cure of a default restores the debtor to the same position as if no default had occurred. The cure may be effected by paying the lender all sums which have fallen due, including reasonable late charges provided in the mortgage instrument, reasonable costs and reasonable attorney's fees as provided in 41 P.S. § 406. Thus, section 404 provides that even if the debtor does not take advantage of the right to cure within the 30 day notice period provided in 41 P.S. § 403, the right to cure continues to exist until an hour before sale.[6]

Third, 41 P.S. § 406 strictly limits the attorney's fees a debtor may be required to pay in order to cure a mortgage default under Act 6. Section 406 expressly provides that "no attorney's fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act." 41

---

3. *E.g., Influential Savings & Loan Association v. Valentine*, 25 D. & C.3d 760 (C.P.Phila.1982); *Federal National Mortgage Association v. Carbaugh*, 94 York L.R. 115 (C.P. York 1979); *Mid-Penn Consumer Discount Co. v. Chamberlain*, 8 D. & C.3d 752 (C.P.Phila.1979); *Fidelity Consumer Discount Co. v. Clark*, 7 D. & C.3d 742 (C.P. Phila.1978); *Charles H. Salmon Building and Loan Association v. Mroz*, 6 D. & C.3d 59 (C.P. Phila.1977).

4. *Reliance Standard Life Insurance v. Presley*, 12 Phila.Co.Rep. 96 (C.P.Phila.1985); *Bankers Mortgage Co. v. DiPersio*, No. 212, June Term 1982 (C.P.Phila. November 1, 1982), *cited in Werts v. Federal National Mortgage Association*, 48 B.R. 980 (E.D.Pa.1985); *Commercial Banking Corp. v. Sponburgh*, No. 2777, December Term 1975 (C.P.Phila. August 15, 1978), *cited in Presley.*

5. The right to cure after a 30 day notice has been sent is limited to three times in any calendar year. 41 P.S. § 404(a).

6. The statutory right to cure provided by section 404 of Act 6 is the keystone provision of the statute. Prior to the enactment of Act 6, the effect of a mortgagee's acceleration of the obligation upon default could not be defeated by the mortgagor's willingness to cure the default. *See* Note, *Mortgage Foreclosure in Pennsylvania*, 85 Dickinson L.Rev. 275, 282–83 & n. 78 (1981). *See also Ministers and Missionaries Benefit Board of the American Baptist Churches v. Goldsworthy*, 253 Pa.Super. 321, 385 A.2d 358 (1978).

P.S. § 406(3). After the thirty day period has expired but "[p]rior to commencement of foreclosure or other legal action," attorney's fees which are reasonable and actually incurred may be charged but in no event in excess of $50.00. *Id.* § 406(2). Finally, "[u]pon commencement of foreclosure or other legal action," reasonable and actually incurred attorney's fees may be charged to the debtor.[7] *Id.*

This statutory scheme evinces a legislative intent to provide residential mortgage debtors with various procedural and substantive protections designed to help them avoid foreclosure. *Kennedy Mortgage Co. v. Washington,* 12 D. & C.3d 476, 481 (C.P. Phila.1979). As such, it is one of a series of recent consumer protection statutes that are to be liberally construed in favor of the homeowner. *See id.; Charles H. Salmon Building and Loan Association v. Mroz,* 6 D. & C.3d 59, 60 (C.P.Phila.1977); *accord, In re Small,* 65 B.R. 686 (Bankr.E.D.Pa. 1986). *See generally Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246 (3d Cir.1980) (construing Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*); *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974) (construing Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.*).

With these principles in mind, I turn to the dispute in the case at bar.

### III.

I begin my analysis by expressing my agreement with Chief Judge Goldhaber's holding in *In re Cosby,* 33 B.R. 949 (Bankr. E.D.Pa.1983) (*Cosby II*). In *Cosby II,* the court held that the source of any right a mortgagee may have to recover from the debtor-mortgagor attorney's fees incurred in seeking relief from stay is the security agreement between the parties. The court reasoned that 11 U.S.C. § 1322(b)(2) prohibits modification of the rights of holders of claims secured only by real property that is the debtor's principal residence and that those "rights" are found in the agreement between the parties. 33 B.R. at 951. I find further support for this holding in 11 U.S.C. § 1322(b)(5) which provides that notwithstanding section 1322(b)(2), a plan may provide for a cure of a default "and maintenance of payments while the case is pending."

In this case, debtors propose to cure their prepetition delinquency to the lender through their plan, and to make their postpetition monthly payments directly to the creditor. Therefore, in accordance with section 1322(b)(5) as well as their confirmed plan, the debtors must perform, postpetition, their contractual obligations while they are simultaneously curing their prepetition default through their payments to the trustee.

In order to determine whether the debtors' recent payment of $4,300.00 constituted full performance of their postpetition payment obligations to the lender, it is necessary to decide whether the debtors are liable, under applicable nonbankruptcy law, for the legal fees incurred by a mortgagee in connection with a motion for relief from stay under 11 U.S.C. § 362. *Cf. In re Compass Van & Storage Corp.,* 61 B.R. 230, 235 (Bankr.E.D.N.Y.1986) (in order to determine whether failure to pay two months rent postpetition is cause for relief from stay under section 362, court must determine rights of parties under state landlord tenant law). To determine the parties' rights under the mortgage, I must consider both the mortgage agreement itself, *see Cosby II,* as well as, in an applicable case, the provisions of Act 6.

■ There are two preliminary issues which must be resolved before I can reach the main issue in the case. First, while the parties have not addressed the question,

---

7. It should be noted that 41 P.S. § 404(2) does not create a statutory right to attorney's fees; rather, it simply regulates the mortgagee's contractually created right to collect attorney's fees. It limits such fees to those that are reasonable and actually incurred "even if greater charges are authorized by the mortgage document." *In re Small,* 65 B.R. 686, 692 (Bankr.E.D.Pa.1986), *appeal docketed* (E.D.Pa. October 23, 1986). *See also In re Cosby,* 33 B.R. 949, 950–51 (Bankr.E. D.Pa.1983) (*Cosby II*).

there is a threshold issue as to the applicability of Act 6. The mortgage secures a loan with a principal amount of $60,000.00 and thus, is in excess of the statutory definition of "residential mortgage." 41 P.S. § 101. Nevertheless, I conclude that the parties' rights under the mortgage are governed by Act 6.

The mortgage in this case provides as follows:

17. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided by applicable law specifying, among other things: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or another defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mort-

gage discontinued at any time prior to at least one hour before the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches or any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Paragraphs 17 and 18 of the mortgage, quoted above, expressly grant the debtors all of the rights set forth in the three statutory sections of Act 6 discussed in Part II above, 41 P.S. §§ 403, 404 and 406. It is apparent that the parties' intent was to incorporate, by contract, the consumer protective provisions of Act 6 of 1974. Further evidence of this intent is found in the first sentence of paragraph 17, which provides that the notice sent prior to acceleration shall be given "as provided by applicable law." The "applicable law" being referred to is Act 6. Although, in some sense, Act 6 is not "applicable" because the mortgage is for a principal sum in excess of $50,000.00, there is no other comparable "law" to which the parties could have been referring. *See generally New Home Federal Savings and Loan Association v. Trunk*, 333 Pa.Super. 393, 482 A.2d 625 (1984) (involving mortgage with provisions identical to paragraphs 17 and 18 here). Finally, the conduct of the parties is con-

sistent with my construction of the mortgage. Prior to acceleration, The Money Store sent the debtors an Act 6 notice and nothing in the lender's presentation of its case before me suggests that it considers itself anything other than bound by Act 6.[8]

■ The next preliminary issue is whether the mortgage contractually restricts the lender's right to charge the debtor for attorney's fees incurred. In *Cosby II*, for example, the court held that the mortgage instrument did not provide for "reasonable" attorney's fees. Rather, the parties' agreement contained a "restrictive ceiling" of 5% of the principal balance owing on attorney's fees which could be charged. 33 B.R. at 950–51. *See also In re Perry*, 59 B.R. 947 (Bankr.E.D.Pa.1986); *In re Schultz*, 58 B.R. 945 (Bankr.E.D.Pa.1985). In this case, however, I find no mathematical restriction on the lender's right to collect counsel fees incurred. Paragraph 17 of the mortgage states that if a default is not cured by the date specified in the 30 day notice, the lender is entitled to collect "all expenses of foreclosure, including.... reasonable attorney's fees." I have already concluded that the parties intended to incorporate the protective provisions of Act 6 into their agreement. Similarly, through the language quoted just above, the debtors have granted the lender the maximum right to collect attorney's fees permitted under Act 6; *i.e.*, the right to collect reasonable fees, actually incurred, subject to any restrictions in 41 P.S. § 406.

### IV.

In this case, after The Money Store sent the debtors an Act 6 notice and after the expiration of the 30 days provided in the notice sent before the commencement of a foreclosure action in state court, the debtors filed bankruptcy which later led to the lender's filing its motion for relief from stay in this court. Section 406 of Act 6 provides, in pertinent part as follows:

With regard to residential mortgages, no mortgage lender shall ... receive attorney's fees from a residential mortgage debtor except as follows:

.      .      .      .      .

(2) *Upon commencement of foreclosure or other legal action* with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3) *Prior to commencement of foreclosure or other legal action* attorney's fees which are reasonable and actually incurred not in excess of fifty dollars ($50.00) provided that no attorney's fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act [41 P.S. § 403].

41 P.S. § 406 (emphasis added).

■ The precise issue in this case, which both parties have asked me to resolve, is whether the phrase "other legal action" in section 406(2) includes a contested matter in bankruptcy court to obtain relief from the automatic stay. If it does, the creditor's position is that it is entitled, under its security agreement, to collect the entire attorney's fee it has paid to its counsel.[9] If not, the debtor's position is that the creditor is limited to a $50.00 fee because the motion for relief was filed prior to the commencement of foreclosure or equivalent proceedings in state court. The creditor counters, not unreasonably, that its motion is a necessary first step in the foreclosure process for it cannot begin foreclosure proceedings against any debtor unless it can

---

8. Since I conclude that the parties, as a matter of contract, have incorporated 41 P.S. § 406, I need not determine the effect, if any, of 11 U.S.C. § 506(b) on those limitations imposed by 41 P.S. § 406. *See In re Johnson-Allen*, 67 B.R. 968, 975–76, (Bankr.E.D.Pa.1986). Also, the parties have not raised this issue and there is no evidence before me in the contested matter that the lender's claim is oversecured and so governed by 11 U.S.C. § 506(b).

9. Under the mortgage agreement, the lender has a secured claim for such a fee and would apply payments received from the debtors to such fees before crediting interest and principal arrearages.

obtain relief from the automatic stay. *See* 11 U.S.C. § 362(a)(1), (3).

While the issue is a close one, I conclude that the creditor here may seek only $50.00 in attorney's fees from these debtors at this time. I base my decision upon a reading of the statute as a whole, likely legislative intent and the purposes of the statute.

I find support for this conclusion in section 403(a) of the state statute. That section forbids a mortgage lender from "commencing any legal action" before sending a 30 day notice of intention to foreclose. Surely, the legislature intended the term "legal action" to have the same meaning in both sections 403 and 406(2). To consider a bankruptcy stay proceeding to be a "legal action," as the lender suggests here in the context of these statutory provisions might mean that a lender could not, under state law, file a motion for relief from stay in a bankruptcy case filed before the lender has sent an Act 6 notice. This could lead to the following absurd result in such a case: the lender could neither seek relief from stay, due to section 403 of Act 6, nor send an Act 6 notice, due to the automatic stay, 11 U.S.C. § 362. Thus, it seems likely that the Pennsylvania legislature could not have intended the term "legal action" in sections 403 and 406(2) to refer to federal bankruptcy proceedings for relief from stay.

Similarly, I am satisfied that the term "other legal action" in 41 P.S. 406(2), has a distinct meaning and purpose under Pennsylvania law. It refers to the different forms of legal action under state law which a mortgagee may employ to enforce its rights against the mortgagor. In Pennsylvania, a mortgage is a pledge of an interest in real property as security for payment of an indebtedness, usually created by a separate note or bond. The note and mortgage, although separate instruments, are securities for the same debt. *E.g., Girard Trust Co. v. City of Pennsylvania* 369 Pa. 499, 87 A.2d 277 (1952); 2 Ladner On Conveyancing in Pennsylvania § 12.02 (1979;

Note, *Mortgage Foreclosure in Pennsylvania,* 85 Dickinson L.Rev. 275, 275–76 (1981). As a result, a lender may elect to bring a legal action on the indebtedness either by suing in mortgage foreclosure or by suing in assumpsit.[10] *See, e.g.,* 22 Standard Pennsylvania Practice 2d, Enforcement of Real Property Mortgages § 121.3 (1984). Thus, the reference to other legal actions in Act 6 refers to the other forms of action a mortgagee may employ to enforce its state law rights under the mortgage. The legislature used the term to make clear that the procedural form of the foreclosure proceedings would be irrelevant; regardless of the form, the proceedings would have to be preceded by a notice of intention to foreclose and the limitations on the collection of attorney's fees would apply.

My construction of 41 P.S. § 406 is also supported by the historical context in which Act 6 was enacted. Act 6 was passed at a time when Pennsylvaia faced a crisis due to the unavailability of residential mortgage loans. The unavailability of such loans is thought to have been linked to the fact that market interest rates exceeded the maximum statutory interest rates then in effect. To remedy this problem, Act 6 replaced the fixed statutory maximum interest rate with a fluctuating rate to be set each month by the State Department of Banking and tied to the monthly index of United States Government bond yields. *See* 41 P.S. § 301. One commentator has described the passage of Act 6 as the product of a necessary compromise between the mortgage lending industry, which desired an increase in the maximum interest rate, and consumer interests, which sought consumer protective provisions for residential mortgage borrowers. Auten, *A Review of the Pennsylvania Usury Law,* 46 Pa.B.Q. 38, 39–40 (1975).

Most of the legislative history on the statute relates to the interest rate issue and there is nothing in the legislative histo-

---

**10.** The "assumpsit" form of action was abolished effective July 1, 1984 and replaced by the "civil action." *See* Pa.R.Civ.P. 1001. In some cases, a lender might also proceed initially by judgment in confession. *See* 41 P.S. § 407; Pa. R.Civ.P. 2981 *et seq.*

ry which is dispositive on the narrow issue now before me.[11] It is much more likely than not, however, that in enacting the consumer protective provisions of Act 6 in January 1974, the legislature did not include relief from stay proceedings in bankruptcy court among those "other legal actions." In 1974, chapter XIII of the former Bankruptcy Act was in effect. Chapter XIII was rarely used by consumer debtors. *See* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 116–117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6076–77; H.R. Doc. No. 93–137, Part I, 93d Cong., 1st Sess. 157–58 (1973). It is therefore unlikely that the legislature would have considered and intended to refer to relief from stay proceedings in 41 P.S. § 406.

Act 6 is an attempt to regulate the process by which the lender recovers under its mortgage obligation. *See* 41 P.S. § 403. Within this context, through 41 P.S. 406, the legislature balanced the competing interests and established certain bright line rules for determining a residential mortgagee's right to pass on its legal expenses to the borrower. First, before a 30 day notice is sent (and during the 30 day period), no legal expenses whatsoever may be charged. This initial period is designed to minimize costs to the borrower and maximize the potential for a cure of the default. If the borrower has not cured the default within the 30 day period, reasonable and actually incurred legal fees may be assessed, but not in excess of $50.00 during the period prior to commencement of foreclosure or other legal action. During this second period, the legislature recognized that some legal work would have to be done to prepare a case for court, but strictly limited the amount of legal expense it considered legitimate prior to foreclosure. Finally, if a foreclosure or other equivalent action has been instituted, reasonable fees may be assessed.

I am reluctant to engraft relief from stay proceedings on to the scheme established by the Pennsylvania legislature in 1974. It is inherent in the statute that, in a particular case, a lender may not receive full reimbursement for legal expenses which it may have reasonably incurred. For example, a borrower may cure a default after the 30 day notice has expired, after the matter has been referred to counsel, after counsel has reviewed the file and prepared a complaint, but before the complaint has been filed in court. In such a case, the legal fee which the lender may require for a cure is only $50.00 even though, on the eve of filing, the lender may have incurred fees substantially in excess of $50.00. In fact, the borrower, in theory, could cure a default in this manner three times within a calendar year. *See* 41 P.S. § 404(a)(1). This does not mean that the attorney cannot charge the lender his usual fee, it only means that the lender must absorb some of the fee itself. Such a result is no less harmful to the creditor than requiring the creditor to absorb some of its own legal expenses in bankruptcy court pursuant to 41 P.S. § 406(3).

In short, to the extent there may be "anomalies" in the statute which may prevent a lender from passing on to the borrower all the attorney's fees it has incurred, they result from clear choices the legislature has made. Whether the development of chapter 13 bankruptcy should lead the legislature to reevaluate the policy choices it made in 1974 is a question I do not consider. If the situation needs to be addressed, it is up to the legislature, not this court, to do so. *See generally Tennessee Valley Authority v. Hill,* 437 U.S. 153, 185, 98 S.Ct. 2279, 2297, 57 L.Ed.2d 117 (1978) ("It is not for us to speculate, much less act, on whether Congress would have altered its stance had the specific events of this case been anticipated.") (footnote

---

11. *See* Pennsylvania Senate Journal 1211–12 (December 4, 1973); *id.* 1308–09 (January 14, 1974); *id.* 1332–36 (January 15, 1974); Pennsylvania House Journal 3269–76 (January 29, 1974). I have also reviewed the various amendments that were made to the consumer protec-

tive provisions of the bill in the Pennsylvania Senate and House of Representatives. *Compare* S.B. 1255 (Printer's No. 1804) *with id.* (Printer's Nos. 1778, 1723, 1508 and 1610) (available from Pennsylvania Legislative Reference Bureau).

omitted); *Gennuso v. Commercial Bank and Trust Co.*, 566 F.2d 437, 443 (3d Cir. 1977) (misgivings about finding of liability under the Truth in Lending Act for non-egregious conduct should be addressed to Congress and not the court). It would be inappropriate for this court to usurp the legislature's prerogative and to make these policy decisions.

I also find some support for my conclusion in the Ninth Circuit's decision in *In re Johnson*, 756 F.2d 738 (9th Cir.) *cert. denied*, —— U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

In *Johnson*, the debtors defeated a creditor's motion for relief from stay under 11 U.S.C. § 362. The debtors sought attorney's fees as the prevailing party under Cal.Civ.Code § 1717. Section 1717 provided that "in any action on a contract," where the contract provides that one party is entitled to attorney's fees for enforcement of the contract, reasonable attorney's fees shall be awarded to the prevailing party regardless which party was specified in the contract as being entitled to fees. *See id.* at 739.

The Ninth Circuit held that the debtor was not entitled to fees under the California statute for prevailing on a motion for relief from stay in bankruptcy court. The court reasoned that state law is not "ordinarily" applied in proceedings under 11 U.S.C. § 362. Stay litigation usually focuses on issues of adequate protection, equity in the property and the necessity of the property for an effective reorganization and is not the assertion of a claim which would give rise to the right or obligation to assert a counterclaim. *Id.* at 740. The court held that a request for relief from stay is not an "action on a contract" to which state substantive law would apply. As an action under a federal statute, any right to attorney's fees would have to find their source in federal law and there is

none under the Bankruptcy Code for a prevailing party in a section 362 proceeding.

The analysis in *Johnson* is helpful insofar as it persuasively highlights that stay litigation is different in many significant respects from legal actions to enforce property rights governed by state law and state forms of legal action.[12] In this respect, it lends support to the conclusion that the reference in Act 6 to "any legal action" was intended to refer only to legal proceedings to recover under the mortgage obligation and not to relief from stay matters.[13]

In summary, I hold that the phrase "other legal action" in 41 P.S. § 406 does not refer to a bankruptcy proceeding to enforce a creditor's federal rights under 11 U.S.C. § 362. I reach this conclusion based on: (1) the desire to interpret sections 403 and 406 consistently in their use of the phrase "legal proceedings;" (2) the significant distinctions between the nature of a relief from automatic stay proceeding and a mortgage foreclosure or equivalent action to recover under a mortgage obligation as discussed in *In re Johnson;* (3) the original intent of the legislature in enacting Act 6 in 1974; and (4) the strong consumer protection policy embodied in Act 6 which is designed to "limit the demands which the mortgagee can make upon the residential mortgage debtor as a condition for totally curing his default," *In re Small*, 65 B.R. at 692.

### V.

Under 41 P.S. § 406(3), The Money Store is entitled to reasonable and actually incurred attorney's fees not in excess of $50.00 for its counsel's work since the expiration of the 30 day notice period. I have no doubt that reasonable fees of $50.00 have been incurred since that time. I cannot, however, find that the debtors are

---

**12.** However, for the reasons set forth in Part III of this opinion, I do not agree with *Johnson* to the extent it states that federal law will *always* govern the disposition of attorney's fees issues which may arise in the context of automatic stay litigation.

**13.** Thus, I need not decide whether attorney's fees are permitted under Act 6 in connection with other contested bankruptcy matters (*e.g.*, proof of claim litigation).

liable to the lender for $50.00 in legal fees incurred in connection with the automatic stay litigation because, on the present record, I cannot determine whether the proof of claim filed for the prepetition delinquency includes $50.00 in counsel fees for other legal work done after the Act 6 notice was sent. If such fees are a component of the proof of claim, the debtors are not liable for further counsel fees under 41 P.S. § 406. *See Cosby II.*

Therefore, I will direct the parties to inform me whether the lender has sought counsel fees pursuant to 41 P.S. § 406(3) in its proof of claim filed with this court. If not, I would expect, based upon the positions and representations made by counsel in this matter, that the debtors will pay the $50.00 immediately.

Based upon this expectation, I will deny the motion for relief without prejudice. An order consistent with this opinion shall be entered.