In re Cheryl **NICKLEBERRY**, Debtor.

In re Margaret **JACKSON**, Debtor.

Margaret **JACKSON**, Plaintiff,

v.

**BOULEVARD MORTGAGE COMPANY**, Defendant.

In re Leatrice **DAVIS**, Debtor.

Leatrice **DAVIS**, Plaintiff,

v.

**CITICORP HOMEOWNERS SERVICE, INC.**, Defendant.

In re LaFennis and Yvonne **DAVIS**, Debtors.

Bankruptcy Nos. 86–03649G, 86–04465S, 86–04196S and 86–04828S.
Adv. Nos. 86–1358S, 86–1422S.

United States Bankruptcy Court, E.D. Pennsylvania.

July 14, 1987.

Arthur L. Haywood, Philadelphia, Pa., for debtor Cheryl Nickleberry.

Gary E. McCafferty, Philadelphia, Pa., for Germantown Sav. Bank, Boulevard Mortg. Co., Citicorp Homeowners Service, Inc. and Bell Sav. Bank.

Jana-Lyn Weisman, Philadelphia, Pa., for debtors/plaintiffs Margaret Jackson and Leatrice Davis.

Margaret A. Lenzi, Chester, Pa., for debtors LaFennis and Yvonne Davis.

Edward Sparkman, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The above-captioned four cases are decided together because they raise related questions about demands of Mortgagees for counsel fees (and certain items of costs) against their respective Mortgagor-Debtors in cases where the Debtors seek to cure mortgage arrearages in Chapter 13 Plans for the following categories of services performed by the Mortgagees' counsel: (1) Pre-petition services in state court foreclosure proceedings; and (2) Post-petition services in the bankruptcy court.

We hold that, as to the first category of services, state law controls and reasonable counsel fees can be claimed. We accommodate the expressed desire of the Mortgagees' and Debtors' counsel to establish a

more or less prophylactic determination as to what fees are reasonable in this context. However, we decline the Mortgagees' invitation to hold that a $500.00 maximum fee reimburseable by the Federal National Mortgage Association (hereinafter referred to as "FNMA") and established as a set fee for these services by Mortgagees' counsel is *per se* reasonable for handling routine, uncontested foreclosures through sheriff's execution sales. We hold, instead, that, unless the Mortgagee meets a burden of showing that higher fees are justified because the foreclosure was not routine or uncontested, a fee of $200.00 for services prior to judgment, and an additional $100.00, or a total of $300.00, for services subsequent to filing execution process is reasonable.

As to the second category of services, we hold that the Bankruptcy Code controls. Failing to find any authority in the Code to rule otherwise, we hold that, unless all of the requirements of 11 U.S.C. § 506(b) are established or the matter fits into a narrowly-defined class of extraordinary situations, Mortgagees, like any other litigants, are not entitled to fees for any post-petition services.

## B. PROCEDURAL SETTING OF THE CASES

### 1. *Nickleberry*

With the exception of the matter at issue in the *Nickleberry* case, all of these matters arose in the context of Objections by Mortgagor-Debtors to Proofs of Claim for mortgage arrearages filed by their respective Mortgagees in Chapter 13 bankruptcy cases. The *Nickleberry* controversy arose in the context of a Motion for relief from the automatic stay filed on January 15, 1987, by the Debtor's Mortgagee, Germantown Savings Bank. The matter was presented to us on a Stipulation of Facts, filed on May 26, 1987, and Briefs of the parties filed thereafter on or about June 9, 1987, and June 26, 1987, respectively. After the Debtor remitted several delinquent post-petition payments, the dispute devolved into a resolution of two issues: (1) May the Debtor include her August, 1986,

mortgage payment, due one day after she filed her petition on July 31, 1986, in her Plan, or must she make this post-payment before the Plan can be confirmed? (2) Is the Mortgagee entitled to the $300.00 counsel fee which it seeks for services in connection with the prosecution of the stay motion?

■■■ We agree with the Debtor on the first issue, as we believe that a modest and justifiable post-petition delinquency can be cured by a Plan without violating 11 U.S.C. §§ 1322(b)(2) or (b)(5). *See In re Minick*, 63 B.R. 440, 442–46 (Bankr.D.D.C.1986); *In re Canipe*, 20 B.R. 81, 83–84 (Bankr.W.D. N.C.1982); and *In re Simpkins*, 16 B.R. 956, 967–68 (Bankr.E.D.Tenn.1982). Here, certainly, the delinquency is modest (one month) and the fact that, had the Debtor delayed in filing her petition for but one day, the disputed August payment would have been pre-petition rather than post-petition, provides, to our thinking, sufficient justification for treating the August payment as if it were a post-petition payment. Therefore, only the counsel fee issue remains and that is discussed subsequently.

### 2. *LaFennis and Yvonne Davis*

The *LaFennis Davis* dispute arose from the Debtors' Objection to the Proof of Claim of Bell Savings Bank, their Mortgagee, filed on February 10, 1987. The only issue raised was a dispute of the $500.00 counsel fee sought by the Mortgagee, solely for pre-petition services in a state court mortgage foreclosure action, the Debtors contending that only fees of $150.00 were reasonable and hence all that were justified.

On May 7, 1987, we conducted a hearing in this matter, at which Joseph A. Goldbeck, Jr., Esquire, the Mortgagee's counsel, was the sole witness, the substance of which is summarized at pages 418–19 *infra*. In the course of that testimony, we became aware that our colleague, the Honorable Bruce Fox, had heard a similar case involving the same counsel, *In re Smith*, Bankr. No. 86–04728F (Bankr.E.D.Pa.), on April 9, 1987. In the *Smith* proceeding, Mr. Goldbeck had also testified, and, at

that hearing, additional testimony was adduced from another attorney who frequently represents mortgagees in foreclosure actions in state court and in our court, Lawrence T. Phelan.[1] It was stipulated in the *Smith* case and our case, respectively, that three other members of the "foreclosure bar," Jonah Levin, Sheldon C. Jelin, and Werner vonRosenstiel, would, if called, provide testimony consistent with that of Mr. Phelan.

On May 22, 1987, and June 5, 1987, respectively, the parties submitted their Briefs in this case.

### 3. *Jackson*

Meanwhile, we became aware of the fact that two other matters which we had under advisement, the *Jackson* and *Leatrice Davis* adversarial proceedings, attacking Proofs of Claim of Boulevard Mortgage Company and Citicorp Homeowners Service, Inc., respectively, raised, *inter alia,* similar issues.[2]

In *Jackson,* the Mortgagee sought the following aggregation of fees and costs:

| | |
|---|---|
| $ 75.00 | Prothonotary |
| 141.80 | Title Search |
| 275.00 | Counsel Fee |
| 50.00 | Bankruptcy Action |
| 48.00 | Prothonotary's Fee |
| 72.00 | Sheriff—Service |
| 369.75 | Sheriff—Sale |
| 20.00 | Certified Mail & Notary Fee |
| 150.00 | Counsel Fee |
| 78.00 | Inspection Fees (13 @ $6.00) |
| $1,279.55 | TOTAL |

The Debtor contended that the only justified charges were the top two charges and $150.00 of the original Counsel Fee, or a total of $366.80.

A major discrepancy arose due to the fact that *Jackson* involved a state court default foreclosure judgment which was stricken due to improper service on a minor daughter of the Debtor in a previous adver-

sarial proceeding between the parties in this Court, at Adv. No. 86–1153S (Bankr.E. D.Pa., Order approving consent to judgment for Plaintiff entered December 4, 1986). As we indicated in our Memorandum of June 1, 1987, we agree with the Debtor that whether the Mortgagee had a *valid* judgment against the Debtor is the key factor to determining whether costs can be imposed upon the Debtor, and indeed is the only relevant inquiry as to whether the entry of the judgment should have any impact whatsoever, including serving as the basis for a claim of fees and costs. While the Mortgagee may have reasonably relied upon the sheriff's return as regular on its face, the important issue is whether it *was* a proper return of valid service. Since it admittedly was not, that settles the question. In response to the Mortgagee's argument that it is inequitable to impose these costs upon it, since it had a "right to rely on the sheriff's return," we observe that it was certainly within the Mortgagee's power to examine the return and determine from such examination whether there was any question as to its validity and to inquire further before proceeding to judgment. Certainly, this error was not the fault of the Debtor.

However, this disposition did not totally resolve that the issue of what counsel fees and costs imposed were in fact proper in the *Jackson* matter.

### 4. *Leatrice Davis* (and *Jackson*—continued)

Similarly, we did not undertake to resolve the *Leatrice Davis* counsel fee issue in the Memorandum. The discrepancy there, between $1,492.65 demanded by the Mortgagee and $1,117.15, which the Debtor agreed was reasonable, was $350.00 in requested counsel fees. The Mortgagee sought $500.00 for services in the pre-petition foreclosure action and $100.00 for filing the Proof of Claim in the bankruptcy;

---

1. Mr. Phelan is also one of our newly-appointed and highly-regarded Chapter 7 Trustee panelists.

2. The other issues raised in the *Jackson* and *Leatrice Davis* cases were allegations of violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (hereinafter referred to as

"TILA"), in the Debtors' respective TILA disclosure statements. In a Memorandum of June 1, 1987, we sustained the validity of both of the Debtors' TILA violations, and we therefore totally resolve these matters in the enclosed Orders.

the Debtor contended that imposition of only $250.00 of the sum requested for pre-petition services upon her was justified.

In our Memorandum of June 1, 1987, addressing the *Jackson* and *Leatrice Davis* cases, we denied both the Debtors' and the Mortgagees' cross-motions for summary judgment as to the fees and costs issues. We invited both parties to either adduce additional testimony relevant to these cases on June 11, 1987; incorporate the testimony from the *LaFennis Davis* and/or the *Smith* case before Judge Fox in their records; or both. Despite our strong suggestion to the parties in that Memorandum that a record as to the specific legal work for which counsel fees were sought in each case would be helpful due to the muddle which we perceived in ascertaining which party had the burden of proof,[3] the parties decided to merely incorporate the *LaFennis Davis* and *Smith* hearings to make their record.

## C. FACTS ADDUCED AT THE HEARINGS

Mr. Goldbeck's testimony at both the *Smith* and the *LaFennis Davis* hearings was totally consistent, although a few gaps were filled in at the latter hearing. He is an attorney who has specialized in mortgage foreclosures for over ten years, handling hundreds of such cases annually. His fee is established by the maximum for which his client is allowed to claim is reimburseable by the FNMA, which, in 1986, the time relevant to all of these cases, was $500.00 for a foreclosure which is handled all the way through a sheriff's execution sale. The amount which is reimburseable is established by a FNMA attorney whom the "foreclosure bar" are constantly lobbying for increases because they believe that the figures are unrealistically modest. The amount reimburseable has increased from $250.00, when Mr. Goldbeck began his

---

**3.** Our language in the Memorandum regarding the classic statement of the burden of proof in these matters, and how that impacted on our decision was as follows:

> This determination is particularly clouded by ascertaining which party has the burden of proof on the issue of "reasonability" of the costs and fees, when such an issue comes to us in the procedural posture of an objection to a proof of claim. Speaking on the topic of the burden of proof in deciding objections to proofs of claim, Collier states as follows:
>
> > "Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is 'deemed allowed,' the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. But the ultimate burden of persuasion is always on the claimant. Thus, it may be said that the proof of claim is some evidence as to the validity and amount. It is strong enough to carry over a mere formal objection without more. The objector is obliged to go forward and adduce sufficient evidence to rebut the claimant's prima facie case. Once this is achieved, however, it remains for the claimant to prove the claim as to its validity and as to its amount and not for the objector to disprove it. In short, once the prima facie effect given the claim is overcome, the burden of ultimate persuasion rests on the claimant to prove that his claim is appropriate for purposes of sharing in the distribution of the debtor's assets. That proof must be by a preponderance of the evidence and it is for the bankruptcy judge to determine whether or not that has been achieved, with due regard being given to the probative value of the proof of claim itself. 2 COLLIER ON BANKRUPTCY, ¶ 502.02, at 502–22 (15th ed. 1987) (footnotes omitted)."
>
> It could be disputed how this statement concerning burdens of proof should be properly applied to the instant record, if we were compelled to make a decision on the present record. It could be argued that the Debtors have not "gone forward" with any evidence to refute the prima facie validity of the asserted claim. On the other hand, it could be contended that the Mortgagees have failed to produce "a preponderance of the evidence" which could authorize our ruling in their favor. We think the fairest assessment of the record is to assume that neither respective opposing party, in moving for summary judgment, intended to stand on the present record if the court determined that they were not entitled to prevail on the record as it stands as a matter of law. Hence, we believe the fairest result is to deny both Motions as to this issue and invite the parties to produce evidence to support their respective positions on this issue at a subsequent hearing. Memorandum, slip op., at 5–7.

practice in 1972, to $450.00 in 1985, $500.00 in 1986, and $525.00 in 1987. Mr. Goldbeck noted that certain legislation, notably Act No. 6 of 1974, 41 P.S. § 101 et seq.;[4] and Act No. 91 of 1983, 35 P.S. § 1680.401c et seq.;[5] and certain judicial decisions, such as *Hines v. Pettit,* —— F.Supp. ——, C.A. No. 85–6707 (E.D.Pa., Order dated Oct. 21, 1986) (entry of judgments larger than amount requested on face of complaint held illegal, requiring mortgagees obtaining judgments to expend additional time in reassessing damages), have rendered the litigation of foreclosure actions more complex. Also, he pointed to the complexities created by an influx of Chapter 13 cases directed at preventing foreclosures upon the enactment of the Bankruptcy Code in 1978.

In the *LaFennis Davis* hearing, Mr. Goldbeck further testified that his present established fees are $50.00 prior to filing a complaint, $300.00 upon filing a complaint (the FNMA maximum), and $525.00 upon consummating a routine, uncontested foreclosure (the present FNMA maximum), which he charged to all of his clients on all foreclosures to coincide with the FNMA fee schedule. He also testified that only two-thirds of the fees payable to him by his Mortgagee clients are reimbursed to the Mortgagees by the FNMA. Upon questioning by the Court, he indicated that the Veterans Administration (hereinafter referred to as the "VA") reimbursed Mortgagees for one hundred (100%) percent of their counsel fees, but that the VA set the maximum fee at a lower figure of $400.00 for a consummated foreclosure.

Despite repeated requests to attempt to do so by the Debtors' counsel, Mr. Goldbeck, indicating that he kept no time records because his fee schedule was not established on an hourly basis, but rather on a "per-case" as is consistent with the FNMA guidelines, had some difficulty indicating the time which he had spent on the specific case in question involving Mr. and Mrs. LaFennis Davis. Although he initially estimated his entire time spent on the case as "three to five hours," he was able to itemize only the following:

| Task | Minutes |
|---|---|
| 1. Review of foreclosure package prior to filing complaint | 20–30 |
| 2. Preparation of complaint | 30 |
| 3. Review of complaint, title search | 20–30 [6] |
| 4. Review sheriff's return | 5 |
| 5. Review of letter from Debtor's counsel about bankruptcy filing, contacting sheriff to put off sale | 15–20 |
| 6. Review of notices for default judgment | 2–3 |
| Total Time | 107–148 Minutes |

When asked about his hourly rate on cases where he does bill on this basis, Mr. Goldbeck indicated that it was $125.00 per hour. He also stated that he employs an associate, Gary E. McCafferty, who receives an hourly rate of $60.00 per hour.[7] The only other firm employees are six secretaries. Mr. Goldbeck's response to the Court's inquiry as to why he did not employ paralegals leads us to conclude that

---

**4.** *See In re Schwartz,* 68 B.R. 376, 382–83 (Bankr.E.D.Pa.1986), for a comprehensive discussion of the legislative history, purposes and certain of the provisions of Act 6.

**5.** For a discussion of certain aspects of this legislation, *see In re Watts, Watts v. PHFA,* 76 B.R. 390, 392, 393–94 (Bankr.E.D.Pa.1987).

**6.** Mr. Goldbeck indicated that there was an atypical lien problem which arose in the *LaFennis Davis* case and probably required an additional 10–15 minutes over the usual time for this task. We will assume, however, that even "routine" cases present certain "atypical" situations.

**7.** This figure appears to be derived from the fact that this is the maximum hourly rate allowed by FNMA in "non-routine" foreclosure actions, in which the $300.00 and $525.00 figures are not the cap.

Interestingly, Mr. Goldbeck is the "office man," and Mr. McCafferty, the "outside man," who does most of the litigation. This seems to be the reversal of the ordinary senior/junior attorney division of labor.

We also note that Mr. Phelan, who is the "outside man" in most ways comparable to Mr. McCafferty in his firm, and whom we believe has less experience than Mr. Goldbeck, charges an hourly rate of $145.00.

these secretaries are highly skilled and function as quasi-paralegals.

## D. PRE–PETITION SERVICES

■ As we indicated to the parties' counsel at the close of the *LaFennis Davis* hearing, we have addressed the subject of counsel fees due to mortgagees for pre-petition services in foreclosure proceedings in two previous Opinions, *In re Jablonski,* 70 B.R. 381, 388–90 (Bankr.E.D.Pa.1987); and *In re Johnson-Allen,* 67 B.R. 968, 975–77 (Bankr.E.D.Pa.1986). In *Jablonski,* we denied any claim for such fees due to the failure of the mortgagee there to put anything into the record regarding the services that had been performed in state court, or even that a foreclosure action had ever been commenced. In *Johnson-Allen,* we limited the mortgagee's claim to five (5%) percent of the principal debt, per the mortgage contract, which, because the principal debt was small, reduced the permissible fees to $230.61.

However, although we believe that both of these cases were correctly decided on their facts, there is one aspect of the reasoning process expressed there that we now believe was misleading, if not simply incorrect. In both cases, we stated that we believed that 11 U.S.C. § 506(b), which provides as follows, was the basis of determining whether a claim for prepetition counsel fees was justified:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

As the Mortgagees' counsel here astutely observes, this reasoning is in some ways inconsistent with that employed by us in *In re Small,* 65 B.R. 686, 689–92 (Bankr.E.D. Pa.1986), *aff'd,* 76 B.R. 390, C.A. No. 86–6874 (E.D.Pa., Order filed June 11, 1987). In that case, we pointed out the distinction between a "secured claim," which is the focal point of § 506(b), and "arrearages," which is, as we noted at the outset, in issue here. By way of contrast, in *Johnson-Allen* and, apparently, in *Jablonski,*[8] the Debtors were proposing to liquidate their respective mortgage balances in full through their respective Chapter 13 Plans. We believe that, as we reasoned in *Small,* § 506(b) has no application in an analysis of what charges the mortgagee can impose in making a "claim" for "arrearages." As in *Small,* we must therefore resort to analysis of "the parties' contract, and the manner in which that contract would be construed under state law." 65 B.R. at 692.

We begin by examining the parties' contract. We quote here the pertinent paragraph nine of the *LaFennis Davis* mortgage, which is substantially the same in all of the pertinent contracts except that of *Nickleberry:*[9]

> That if at any time, a Writ of Fieri Facias or other execution is properly issued upon a judgment obtained upon said note, or if a Writ of Scire Facias is issued or other foreclosure proceedings instituted upon this mortgage, an attorney's commission for collection, viz: FIVE per centum (5%) of said principal debt or sum, shall be payable, and shall be recovered in addition to all principal and interest and all other recoverable sums then due, besides costs of suit, and the Mortgagor does hereby expressly waive and relinquish all benefit that may accrue to him by virtue of any and every law, civil or military, made or to be made hereafter exempting the mortgaged premises or any other premises or property whatev-

---

**8.** Contrary to our initial prognosis, the *Jablonski* Debtor has most recently submitted a Plan proposed to pay off therein her entire mortgage claim, rather than arrearages. (*Compare* 70 B.R. at 390, where we predicted that she would merely attempt to cure her mortgage arrearages in her Plan). If this prediction is incorrect,

then our result and *reasoning* in *Jablonski* was correct, because the request for counsel fees would have arisen in the context of a "secured claim."

**9.** See page 424 *infra,* where we quote the pertinent language in the *Nickleberry* contract.

er, either real or personal, from attachment, levy and sale under execution, or any part of the proceeds arising from any sale thereof, and all benefit of any stay of execution or other process.

The foregoing clause, unlike the "modern" version in *Nickleberry*, is initially noteworthy because of its confusing references to archaic procedures which disappeared from the Pennsylvania legal scene years before the mortgage was drafted (e.g., the Writs of Fieri Facias or Scire Facias) and to inclusion of unenforcible recitations (e.g., purported waiver of benefits of every law (including bankruptcy?) and of a right to claim personal exemptions). However, more importantly, the foregoing clause only authorizes counsel fees upon the commencement of "foreclosure proceedings",[10] although it does authorize counsel fees measured at five (5%) percent of the "principal debt," which would result, in all of the pertinent cases here, in a figure in excess of the $500.00 requested by the respective Mortgagees.

However, it is at this point that the pertinent state law, Act 6 of 1974, 41 P.S. § 101 et seq. (hereinafter referred to as "Act 6"), kicks in to the process, as it did in our ultimate analysis in the *Small* case. 65 B.R. at 692–93. *Accord, In re Lagasse*, 71 B.R. 551, 553–54 (Bankr.D.Conn.1987).

■ The most pertinent provision of Act 6 is 41 P.S. § 406, which provides as follows:

§ 406. Attorney's fees payable

With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:

(1) Reasonable fees for services included in actual settlement costs.

(2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this Act.

*See generally In re Schwartz*, 68 B.R. 376, 377–79 (Bankr.E.D.Pa.1986) (per FOX, J.); and *In re Cervantes*, 67 B.R. 816, 820–21 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH. J.). As all of the parties agree, Act 6 requires that, irrespective of the terms of the mortgage contract reciting a formula for measurement which might be more liberal to the mortgagee, the mortgagee is entitled to recover from the mortgagor no other counsel fees except such as are "reasonable and actually incurred." 41 P.S. § 406(2).[11]

It appears, from the unrebutted evidence presented in both the *LaFennis Davis* and the *Smith* hearings, that the FNMA-established fees ($500.00 to take a foreclosure through sheriff's sale; $300.00 to take it through the filing of the foreclosure complaint) were actually incurred by the re-

---

**10.** The pertinent clause of the *Jablonski* mortgage was similarly limited in its scope to authorization of collection fees only if foreclosure proceedings had been instituted, and thus the failure of the mortgagee there, unlike the mortgagees here, to establish that such proceedings had been commenced was fatal to the counsel fees claim there. *See* 70 B.R. at 389.

**11.** In our view, this does not reflect a departure from Pennsylvania law generally, which has always restricted the fees recoverable to such as were "reasonable," *see, e.g., Hoffman Estate,* 349 Pa. 59, 64–65, 36 A.2d 640, 643–44 (1944); *Philadelphia Acceptance Corp. v. Krapf,* 35 Pa. D. &

C. 3d 101, 103–05 (Bucks Co. C.P. 1984); and *First Eastern Bank v. Thomas,* 5 Pa. D. & C. 3d 71 (Columbia Co. C.P. 1977), and logic dictates that, in order to prevent a windfall to the obligee, counsel fees obtainable from the obligor should be limited to those "actually incurred" by the obligee.

It appears that 41 P.S. § 406 was nevertheless considered to be a necessary component of Act 6 to prevent overreaching by mortgagees which had been rampant prior to its enactment. It is with this historical precedent of overreaching that the Mortgagees here must now grapple.

spective mortgagees here. The question is: Are these fees "reasonable?"

We note several principles at the outset. First, bankruptcy courts have consistently reviewed fee requests made under § 506(b), where that Code provision is in fact pertinent, to determine whether such demands are "reasonable," irrespective of more liberal contract clauses. *See, e.g., In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1056–58 (5th Cir.1986); *In re 268, Ltd.*, 789 F.2d 674, 675–77 (9th Cir.1986); *In re Stanwood Devries, Inc.*, 72 B.R. 140, 142–43 (Bankr.D.N.J.1987); *Johnson-Allen, supra,* 67 B.R. at 975; and *In re Kennedy Mortgage Co.*, 23 B.R. 466, 472–74 (Bankr. D.N.J.1982).

■ Secondly, in making our assessment of the "reasonability" of fees requested, we must consider, but are not bound by, what counsel advocating for the fee contends is the "market rate." *See Daggett v. Kimmelman*, 811 F.2d 793, 799–800 (3d Cir.1987); and *In re Shaffer-Gordon Associates, Inc.*, 68 B.R. 344, 350–51 (Bankr.E. D.Pa.1986). As we observed in *Shaffer-Gordon*, "it is incumbent upon the Court to place some checks upon counsel's requests ... because the local market rates could otherwise simply be manipulated upwards by the bar, ..." *Id.* at 350.

Thirdly, we note that the traditional means for determining counsel fees, particularly in "statutory fee cases," is the "lodestar" method employed in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973), *appeal following remand,* 540 F.2d 102 (3d Cir.1976). *See* Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242–43, 259–60 (1985); and *In re Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975). We believe that requests by the Mortgagees for counsel fees from Debtors, unlike requests for compensation from debtors' estates, are more akin to "statutory fee" cases than "fund-in-court" cases. In a sense, these fees are "penalties" for the Debtors' "wrongdoing" in breaching the payment terms of their contracts.

*Compare Shaffer-Gordon,* 68 B.R. at 349–50.

We observe that the parties have cited only one case to us in which a Pennsylvania court applied 41 P.S. § 406, *Union Banking & Trust Co. v. Johnston*, 28 D. & C. 3d 158, 168–69 (Clearfield Co. C.P. 1983). In that case, analyzing the record, the court noted that the mortgagee's counsel had expended sixteen and a quarter (16¼) hours in staving off the mortgagor's various defenses, including several based on alleged violations of the TILA, which, unlike those in the *Jackson* and *Leatrice Davis* matters before us, were ultimately found to be totally lacking in merit. *Id.* at 165–68. Given that the hourly rate of $100.00 of the mortgagee's counsel there, the court found fees of $1,000.80 quite reasonable.

■ Applying these principles to the cases at hand causes us to conclude that a fee of $300.00 for handling a routine mortgage foreclosure through the sheriff's execution sale, and a fee of $200.00 for handling such a case through only the complaint stage is quite reasonable. *Accord, Johnson-Allen, supra,* 67 B.R. 976 & n. 6 ($230.61 found to be reasonable compensation for handling mortgage contested in early pre-bankruptcy stages). Applying the *Lindy Bros.* lodestar, we are compelled to note that, in the *LaFennis Davis* matter, Mr. Goldbeck, despite his contention that he spent "three to five hours" on the case, could not document, by his highest estimates, even two-and-a-half hours of time expended. See pages 419 *supra.* Very little of his time was utilized after the complaint was filed, as he testified that the execution papers were generally prepared by his secretaries. Moreover, bankruptcies will nearly always be filed prior to the consummation of the execution by means of a sheriff's sale, thus reducing the time on that end.

However, given Mr. Goldbeck's hourly rate of $125.00/hourly, it would take almost two-and-a-half hours of services to arrive at the $300.00 figure. We should also add that it might be questioned whether someone with an hourly rate as low as

the $60.00 rate of Mr. McCafferty, who we observe is a most competent practitioner, could not perform these services as well. Thus, on this record (and it was presented in the "test-case, best case" scenario), even this award gives all benefit of doubts to the Mortgagee.

With all due respect to FNMA's fee schedule, without any evidence as to how the figures included therein are derived, we cannot and will not say that these figures are "reasonable" simply because they are lower than the interested "foreclosure bar" contends that they should be. The evidence of the actual time spent, presented to us, is worth far more than standards which some corporate official, whose background and criteria are unknown to us, has established.

We should emphasize that we are not foreclosing the possibility that higher counsel fees may be awarded to a Mortgagee's counsel where the foreclosure is non-routine, or where, for any other reasons, additional time is proven to have been reasonably expended by counsel. We also are not writing these figures in stone, because we recognize that time and inevitable inflation would justify an upwards adjustment. *Cf. In re Souders*, 75 B.R. 427, 434–35 & n. 1 (Bankr.E.D.Pa.1987). However, we are holding that, in the year 1986 and up to the present, unless specific evidence is presented to the contrary, we will, upon request of either party, establish the counsel fees in routine, non-contested state court foreclosure proceedings which Mortgagees can "reasonably" demand at $200.00 if a complaint is filed and no execution proceedings are commenced pre-petition, and $300.00 if execution proceedings have been commenced.[12]

▆▆▆▆ ·Applying this conclusion to the cases before us, we shall reduce the pre-petition counsel fee requests in both *Davis* cases to $300.00. In *Jackson*, we shall reduce the fee to $200.00, per our discus-

sion at page 6 *supra* that we must disregard admittedly-invalid execution process and consider this as a case where the complaint only was filed. We are also striking the $25.50 charges in the *Leatrice Davis* case for "Recorder of Deeds" and "Certified Mail and Notary Fee," as these have not been established as necessary and reasonable by the Mortgagees' counsel. Thus, the figures for counsel fees and costs in the Proofs of Claim in the *Jackson* and *Leatrice Davis* cases are reduced to $416.80 and $1,167.15, respectively.

## E. POST–PETITION SERVICES

The second issue, concerning the propriety of imposing counsel fees on Debtor-Mortgagors for post-petition services, has also been addressed by us in two prior decisions, *In re Tashjian*, 72 B.R. 968, 974–76 (Bankr.E.D.Pa.1987); and *In re United Nesco Container Corp.*, 68 B.R. 970, 974 (Bankr.E.D.Pa.1987).

▆▆▆▆ Although our reference to § 506(b) in *Jablonski* may have been misplaced, we do not believe that our reference to that Code section in *Tashjian* was misplaced in the least. Although some reference to state law may be appropriate, we believe that claims for post-petition services are justifiable only if specifically authorized by the Code. Hence, we reiterate the following passage from *Tashjian*, 72 B.R. at 974–75, which we believe is totally accurate and applicable here:

> Our most recent decision wherein we addressed claims of a creditor for attorneys fees against a debtor was *In re Jablonski*, 70 B.R. 381, 388–90 (Bankr.E.D.Pa.1987). There, we held that a mortgagee, to be entitled to a claim of attorneys fees against a debtor-mortgagor, must establish that such fees are (1) allowable under the terms of § 506(b); (2) provided for in the parties' agreement; (3) reasonable; and (4) allowable under pertinent state law. *Id.* at 388–89. However, in *Jablonski*, it must be recalled that we were addressing the issue

12. We also note that, if no complaint has been filed pre-petition, counsel fees are limited to $50.00 pursuant to 41 P.S. § 406(2). *See*

*Schwartz, supra,* 68 B.R. at 380–85; and *Cervantes, supra,* 67 B.R. at 820–21.

424

of a creditor's right, as specifically provided by contract, to claim attorneys fees incurred in pre-petition collection activity. We were not discussing the right of a creditor to enhance the sum allowable in a claim, per § 5606(b), by allowing fees, not specifically provided by contract, for services performed in the bankruptcy court. The latter subject, we addressed more directly in our previous decision in *In re United Nesco Container Corp.*, 68 B.R. 970, 974 (Bankr.E.D.Pa.1987), where we stated as follows:

"We agree with observations of the court *In re Roberts*, 20 B.R. 914, 920 (Bankr.E.D.N.Y.1982), that clauses in contracts providing creditors with attorneys' fees in certain contingencies must be 'strictly construed' or such 'requests fly squarely into the teeth of the American rule' that parties must generally bear their own counsel expenses. *Accord, In re Frey*, 34 B.R. 607, 611 (Bankr.M.D.Pa.1983) (per WOODSIDE, J.). Hence, consistent with the holding in *Roberts*, we are disinclined to hold that a contract clause providing that the obligor pay attorneys' fees to the obligee to recompense the latter for its collection efforts should be broadly read to include all services connected with the collecting, including services performed in pursuit of its claim in bankruptcy court. *See also In re Johnson-Allen*, 67 B.R. 968, 975–976 (Bankr.E.D.Pa. 1986)."

We reiterate this statement, and clarify it by explaining that, only in extraordinary situations, such as where legally unjustifiable conduct of a party or counsel for a party is established, or where the debtor requests some extraordinary dispensation, would we grant attorneys fees to counsel for the opposing party for his services in bankruptcy court. A contrary result would be inconsistent with not only the "American rule," as we indicated in *United Nesco*, but our frequently-reiterated view that we will allow attorneys fees and costs only where the Code specifically allows same. *See,*

*e.g., In re National Paragon Corp.*, 68 B.R. 337, 340–41 (Bankr.E.D.Pa.1986) [*rev'd*, 76 B.R. 73 (E.D.Pa.1987)]; and *In re Jennings*, 67 B.R. 106, 109–10 (Bankr. E.D.Pa.1986). Examples of such "extraordinary dispensations" are suggested by such circumstances as those described in *In re Young*, 70 B.R. 968, 972 (Bankr. E.D.Pa.1987) (fees may be awarded where party seeks reopening of a case after opposing party has expended sums in reliance of closing); and *In re Durkalec*, 21 B.R. 618 (Bankr.E.D.Pa.1982) (fees awarded as a condition for reviving automatic stay where opposing party has expended sums in reliance of stay's termination).

The issue of the Mortgagees' right to collect fees for post-petition services arises in *Nickleberry*, where the mortgagee requests $300.00 for filing a motion for relief from the automatic stay, and in *Jackson* and *Leatrice Davis*, where the mortgagees sought $50.00 and $100.00, respectively, for filing Proofs of Claim in the respective bankruptcy proceedings. To each of these circumstances, we apply the four-prong test set forth in *Tashjian*.

Initially, there has been no record made as to whether the mortgages in issue are oversecured. The Debtors' Schedules appear to indicate that they most probably are. We shall therefore assume, *arguendo*, that the Mortgagees pass this test.

■ The difficulty for the Mortgagees arises from meeting the test presented by the second prong of the *Tashjian* criteria. The clause in the mortgage contract presented to Debtors in *Jackson* and *Leatrice Davis* is almost verbatim of that in the mortgage in the *LaFennis Davis* case, which we quoted at page 420–421 *supra*. The *Nickleberry* mortgage is a more modernized document, and the pertinent paragraph eighteen therein provides as follows:

18. Acceleration: Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage,

Lender prior to acceleration shall mail notice to Borrower as provided by applicable law specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports.

However, both of these versions of the clause allowing a mortgagee to collect counsel fees from a defaulting mortgagor have one thing in common: they authorize fees only in a "foreclosure proceeding." Given the predominance of the "American rule" that parties must bear their own counsel fees unless the parties' contract or applicable law states to the contrary and the well-recognized maxim that contracts, particularly clauses thereof buried in adhesion contracts, are construed strictly against the parties preparing the contracts, we refuse to conclude that the term "foreclosure proceeding" should be read to include any bankruptcy court process, including motions to obtain relief from the automatic stay or the filing of Proofs of Claim. *Cf. Schwartz, supra,* 68 B.R. at 382–84 (reference in 41 P.S. § 406(2) of Act 6 to "other legal action" is not construed as a reference to bankruptcy court proceedings).

We therefore hold, as we did in *Tashjian,* that the obligees fail to satisfy the second prong of the four-prong test. 72 B.R. at 976.

We also note that we have considerable doubt whether the test set forth in the third prong of the test can be met by the mortgagees, at least as to the Proofs of Claim filed in the *Jackson* and *Leatrice Davis* cases, either. In the *LaFennis-Davis* case, the Mortgagee quite competently prepared its own Proof of Claim. The Proof of Claim form is certainly simple enough and is devised in such a way that a creditor need not hire a lawyer to file it. Thus, it is difficult to justify any legal fees for doing so.

The *Nickleberry* relief from stay motion is, of course, proper fare for counsel. However, as we indicate *infra,* we have a great difficulty in granting counsel fees for preparation of motions in bankruptcy court in any but extraordinary situations.

Finally, no state law appears applicable, although we note that we totally agree with the holdings in *Schwartz* and *Cervantes* that, if pre-petition foreclosure proceedings have not been commenced, 41 P.S. §§ 404(b)(3) and 406(3) of Act 6 would limit counsel fees to $50.00. *See Tashjian,* 72 B.R. at 976 n. 5.

We reiterate, as we held in *Tashjian,* 72 B.R. at 975, quoted at pages 424 *supra,* that we have a distinct distaste for granting any awards of counsel fees as "rewards" to any parties involved in litigation in bankruptcy courts in all but extraordinary situations. We totally agree with the observation in *In re Johnson,* 756 F.2d 738, 741 (9th Cir.) *cert. denied sub nom. Johnson v. Righetti,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985), that, since "no federal statute provides for an allowance of attorney's fees to debtors in circumstances such as this case [successfully resisting a motion for relief from the stay]," no fees should be awarded. This ruling, of course, insulates mortgagees from subjection to awards of counsel fees to debtors who are successful in objecting to Proofs of Claim, unless a pertinent state or federal statute, such as the TILA which

is pertinent to part of the *Jackson* and *Leatrice Davis* proceedings, as well as it insulates mortgagors.

 We acknowledge that former Chief Judge Goldhaber of this Court did award a mortgagee counsel fees of $200.00 for tasks performed in pursuit of two separate motions seeking relief from the automatic stay in *In re Cosby*, 33 B.R. 949 (Bankr.E. D.Pa.1983); and *In re Cosby*, 22 B.R. 682 (Bankr.E.D.Pa.1982). However, in the first *Cosby* case, *no* statutory basis for the award is proffered, and, in the second *Cosby* case, reliance was based upon only 11 U.S.C. § 1322(b)(2). However, as we held in *Small, supra*, 65 B.R. at 689–90, we do not believe that § 1322(b)(2) has any impact on any actions except efforts to modify secured claims. We fail to see how litigation involving a motion for relief from the stay could conceivably be equated with a modification of the mortgagee's secured claim, which is the subject matter of § 1322(b)(2).[13]

Therefore, we respectfully decline to follow the *Cosby* decisions, preferring instead to follow our own prior decisions in *Tashjian* and *United Nesco* and the reasoning of *Johnson, supra; In re Frey*, 34 B.R. 607, 611 (Bankr.M.D.Pa.1983) (per WOODSIDE, J.); and *In re Roberts*, 20 B.R. 914, 920–22 (Bankr.E.D.N.Y.1982), to the contrary.

We therefore hold that, the criteria of § 506(b) not having been met and no extraordinary situation as was described in *Tashjian*, 72 B.R. at 975, quoted at page 424 *supra*, having been established, the respective Mortgagees' requests for counsel fees for post-petition services must be denied.

Orders relevant to each of the cases in issue, consistent with this Opinion, shall issue.

---

**13.** We do not agree with the mortgagees' suggestion that Judge Fox "affirmed" the *Cosby* holdings in *Schwartz*. In fact, Judge Fox made only one reference to either of these decisions, citing the first decision one time in the footnote, 68 B.R. at 377 n. 2, and expressly holding that he did not reach the issue of the right of the mortgagee to obtain counsel fees in contested bankruptcy matters. *See also id.* at 384–85 & n. 13. The holding in *Schwartz* was merely that Act 6 applied to the mortgagee's request, and that the request was limited to $50.00 under 41 P.S. § 406(3) given the facts of that case.