**In re Darlene LEWIS a/k/a Darlene Brown, Debtor.**

**Bankruptcy No. 86–04628S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 10, 1987.

Arthur W. Lefco, Philadelphia, Pa., for Home Unity.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant matter presents a Debtor's Objection to a Proof of Claim filed by the Debtor's mortgagee, Home Unity Savings and Loan Association (hereinafter referred to as "Home Unity"). Our need to make factual determinations as to whether and in what amounts mortgage payments were remitted by the Debtor to Home Unity over a seven-year period on a rather piecemeal record causes us to focus on the burden of proof in such proceedings. We hold that,

the Debtor having produced evidence challenging the payments credited to her and charges imposed upon by Home Unity over the period in question, the burden of proving its claim fell upon Home Unity under a "preponderance of evidence" standard, just as if Home Unity were a plaintiff in a lawsuit against the Debtor. Having so concluded, we hold that the Debtor is entitled to a reduction of Home Unity's asserted claim of $6,677.00 by $1,013.99, the difference between the payment receipts produced by the Debtor and the payments recorded on Home Unity's records.

The classic statement of the burden of proof in litigation of objections to proofs of claim is set forth in 3 COLLIER ON BANKRUPTCY, ¶ 502.02, at 502–22 (15th ed. 1987), as follows:

Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. But the ultimate burden of persuasion is always on the claimant. Thus, it may be said that the proof of claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more. The objector is obliged to go forward and adduce sufficient evidence to rebut the claimant's prima facie case. Once this is achieved, however, it remains for the claimant to prove the claim as to its validity and as to its amount and not for the objector to disprove it. In short, once the prima facie effect given the claim is overcome, the burden of ultimate persuasion rests on the claimant to prove that his claim is appropriate for purposes of sharing in the distribution of the debtor's assets. That proof must be by a preponderance of the evidence and it is for the bankruptcy judge to determine whether or not that has been achieved, with due regard being given to the probative value of the proof of claim itself (footnotes omitted).

This passage and its previous versions in Collier, or paraphrases thereof, have been recited with approval by the judges of this court on numerous occasions. *See, e.g., In re Rabzak,* 79 B.R. 960, 963 (Bankr.E.D.Pa. 1987) (TWARDOWSKI, CH. J.); *In re Stinger,* Bankr. No. 87–01332F, slip op. at 2 (Bankr.E.D.Pa. July 22, 1987) (FOX, J.); *In re Nickleberry,* 76 B.R. 413, 418 n. 3 (Bankr.E.D.Pa.1987) (SCHOLL, J.); *In re Almarc Corp.,* Bankr. No. 82–02403G, slip op. at 2 (Bankr.E.D.Pa. April 16, 1987) (FOX, J.); *In re Bey,* Bankr. No. 86–04554F, slip op. at 2–3 (Bankr.E.D.Pa. March 19, 1987) (FOX, J.); and *In re Barclay Bros., Inc.,* Bankr. No. 82–03920G, slip op. at 4 (Bankr.E.D.Pa. Feb. 6, 1986) (KING, J.) [Available on WESTLAW, 1986 WL 15,884]. However, although we did not question its accuracy, we did suggest, in *Nickleberry,* 76 B.R. at 418 n. 3, that there is some difficulty in applying this fine-sounding wording to scenarios which commonly arise in litigation involving objections to Proofs of Claim. Our efforts, here, begin with an attempt to adopt the meaning and apply this language to several of the most common of those scenarios, as follows:

 Scenario 1: There is no objection to a Proof of Claim. In this situation, the Claim is *prima facie* established and must be allowed.

 Scenario 2: An objection to a Proof of Claim is filed and properly served, but the claimant fails to answer in writing or to appear at the hearing. In this situation, we believe that the proper result is to strike the Proof of Claim. The filing of the objection calls the *prima facie* validity of the claim into question, and the claimant, to preserve the claim, must express some interest in doing so. Thus, the objection cancels out the mere filing of a Proof of

Claim and the failure of the claimant to defend it requires us to sustain the objection without question, just as we are not inclined to question the validity of the Proof of Claim as filed if there is no objection to it.

■ Scenario 3: The claimant responds to an objection to the Proof of Claim in writing, and neither the claimant nor the objector presents any evidence at the hearing. In this case, the objector has declined to "produce evidence" to defeat the claim despite the fact that the claimant has expressed an interest in asserting it. Thus, in this case, we believe that we should examine the Proof, the objection, and the response, and, unless the claimant's position is patently untenable, the claim should be sustained.[1]

■ Scenario 4: The claimant responds to an objection, in writing, but only the objector appears and presents evidence at the hearing. Here, we believe that, as in the previous scenario, we must examine the Proof, the pleadings, and the record and sustain the Proof of Claim only in the amount that we would if we were hearing the matter at trial, with, as at trial, the burden of proving its case by a preponderance of the evidence upon the claimant. In this case, the objector has gone forward with evidence, and any presumption in favor of the claimant vanishes. This disposition is similar to the "bursting bubble" theory of the impact of presumptions, which we declined to apply in interpreting 11 U.S.C. § 547(f) in *In re Art Shirt, Ltd., Inc.*, 68 B.R. 316, 322 (Bankr.E.D.Pa.1986), but which we believe is properly applied here.

■ Scenario 5: The claimant responds to an objection in writing, and both parties

appear and present evidence at the hearing. In this situation, we believe that we should render our decision exactly as we would do if we were hearing any sort of adversary proceeding or contested matter, with the claimant in the same position as the party plaintiff or movant. Consistent with Collier's pronouncements, we believe that the objector must initially produce evidence tending to defeat the claim, and hence must present its case first. However, after all of the evidence is in, and assuming that the "bubble" of the presumption is "burst" by the objector's evidence, the claimant will prevail only in the amount that it would be awarded at a trial or hearing, in which the burden of proving its case by a preponderance of evidence upon the claimant.[2]

The instant case presents the fifth scenario, as both parties appeared and presented evidence. We conclude, consistently with the above discussion, that Home Unity had the burden of proof in this proceeding and that we should decide the matter exactly as if we were rendering a decision as a trial court hearing Home Unity's case against the Debtor.

Having decided how we should proceed to decide the case, we now turn to the facts presented to do so.

The instant Chapter 13 case was filed on October 6, 1986, by a Community Legal Services, Inc. (hereinafter referred to as "CLS") attorney, Alan M. White, Esquire. This case was the third encounter of the Debtor with Chapter 13, the others being Bankr. No. 80–02568G, apparently filed by Michael L. Douglas, Esquire, and Bankr. No. 82–05046G, filed by Jonathan H. Ganz, Esquire. The centerpiece of each of these proceedings was an effort of the Debtor to save her home from foreclosure.

---

**1.** Given this disposition, it is not necessary to review the relatively uncommon scenario where only the claimant presents evidence at a hearing. Generally, the claimant need not do so to prevail.

**2.** This result is not inconsistent with our reasoning as to the burden of proof in other contexts, where we held that the ultimate burden is generally upon the party with the most access to proof on the particular point. *See In re Crompton*, 73 B.R. 800, 808–09 (Bankr.E.D.Pa.1987)

(Debtor has burden on an Objection to a Plan under 11 U.S.C. § 1325(b)(1)(B)); and *In re Furlow*, 70 B.R. 973, 978–79 (Bankr.E.D.Pa.1987) (Debtor has burden on an Objection to a Plan under 11 U.S.C. §§ 1322(a)(3) and (b)(1)). *But see In re Fries*, 68 B.R. 676, 682–86 (Bankr.E.D.Pa.1986) (Objector has burden on an Objection to a Plan under 11 U.S.C. § 1325(b)(1)(B)). The claimant, we submit, generally has the most access to proof of his own claim.

On the last occasion, in which she was represented by CLS, Mr. White had, prior to the bankruptcy filing, attempted unsuccessfully to have set aside a summary judgment entered against the Debtor in a foreclosure action in which she had been previously represented by yet another attorney, Jeffrey S. Toaltoan, Esquire. On the eve of a sheriff's sale scheduled to execute upon the foreclosure judgment, the Debtor succumbed once again to bankruptcy.

We have been able to locate two Proofs of Claim filed by Home Unity in this case, the first of which, filed November 25, 1986, recites a principal balance due of $10,420.43 and arrearages of $9,273.40, including $5,287.44 in monthly payments, $84.59 in late charges, $1,174.87 for "foreclosure expenses," and $2,726.50 for "bankruptcy expenses."

On February 18, 1987, Mr. White filed an Objection to this Proof of Claim, alleging excessive imposition of expenses, improper calculation of late charges, and a recoupment claim for $1,000.00 due to alleged violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"), in the mortgage documents.

On May 13, 1987, the Standing Chapter 13 Trustee moved to dismiss the present case on the ground that the Debtor's Plan was not feasible. The root of the feasibility problem was the Debtor's dispute over the amount of the claim of Home Unity. The Trustee's Motion, a scheduled Confirmation Hearing, and the Objection to Home Unity's claim were appropriately listed together on June 24, 1987.

On or about the latter date, we became aware that a rift had developed between Mr. White and the Debtor. It appears that Mr. White had agreed with Home Unity that it could refile a scaled-down Proof of Claim to resolve the Objection, and that the Debtor refused to accede to this. In any event, Home Unity filed an Amended Proof of Claim in the amount of $6,446.72 on July 28, 1987. On July 30, 1987, the Debtor advised us that she had discharged Mr. White, and she requested a continuance of the combined hearing on the Confirmation, the Trustee's Motion, and her Objection, in order to obtain new counsel. We rescheduled the hearing for September 22, 1987.

On that date, the Debtor, appearing pro se, eschewed the TILA Objection, and indicated that her sole area of dispute with Home Unity involved the amounts that Home Unity claimed were paid by her and hence were due on the mortgage. The parties agreed to a further continuance of all of the matters until October 22, 1987.

On October 22, 1987, the Debtor again appeared pro se, armed with receipts and letters dating back to 1980 and presented all of the foregoing in testimony delivered with supreme confidence that she would be vindicated in her years of disputes with not only Home Unity, but her series of attorneys. We admitted all of her proffered documents into evidence.

Home Unity, by its counsel, attempted to peck at the Debtor's inability to produce receipts for all months in which it claimed that no payments were made on cross-examination and then presented its agent, Rebecca Hansell, who presented a Log of Payments prepared by Home Unity which contained information on payments allegedly made, received, and owed for each month from 1980 through 1987.

Home Unity's strategy was successful in relation to the alleged arrearages for 1980 and 1981. The Debtor claimed that she was simultaneously paying Home Unity and placing payment arrearages with her then-attorney, Mr. Douglas, during this period. She produced receipts of the payments by Mr. Douglas, which coincided with the credits given to her on Home Unity's records. However, she produced no receipts of the additional payments which she claimed to have made and for which Home Unity had given her no credit.

However, the Debtor fared better as to her claims regarding subsequent years. For 1982, she produced receipts indicating payments from January through October, in or very near to the amount of $176.00, her regular mortgage payment. However, Home Unity's records showed "payment amounts" in lesser sums, ranging from $75.57 to $129.42, over this period. No

explanation for this discrepancy was tendered. In May, 1983, the Debtor produced a receipt for $123.76 which did not appear on Home Unity's Logs. In 1984, she produced six receipts in the amount of $151.36, and only five appeared on Home Unity's Logs. In January, 1987, the Debtor produced a receipt for $176.00, but only $125.47 was credited on the Logs. We also note that neither the Logs, nor any other documents admitted into the record, addressed the calculation of late charges allegedly due from the Debtor.

At the close of the hearing, Home Unity summarized its claim, transposed from its Logs, as follows:

| | |
|---|---|
| Arrearages | $5,158.53 |
| Legal Fees | 750.00 |
| Costs | 887.87 |
| Late Charges | 84.59 |
| SUB TOTAL | $6,880.99 |
| Credit for 5/82 payment which it agreed the Debtor had made but which did not appear on the Logs | 203.99 |
| TOTAL | $6,677.00 |

We questioned the entries for Legal Fees and Costs, which did not appear on the Logs. Home Unity responded that it had believed that the Debtor had withdrawn her objections as to these and, when the Debtor and this Court indicated otherwise, received permission to submit documentation on these matters only on or before October 26, 1987. Consequently, Home Unity sent to the Debtor and us time records which, while containing numerous entries for services in bankruptcy court, which we would not allow, see Nickleberry, supra, 76 B.R. at 423–26, also included charges for prosecuting the contested prepetition foreclosure action well in excess of the $750.00 limit proposed by the mortgage documents and hence sought by Home Unity. Charges for filing fees, sheriff's costs, and other official charges supported the $887.87 figure demanded for costs.

We also invited both parties to submit any written arguments in support of their respective positions on or before October 30, 1987. The Debtor submitted more documents to us, which we were compelled to return to her, as inappropriate ex parte submissions, sight unseen. Home Unity submitted a brief Memorandum in which it contended that there was a "presumption of validity" of its claim, concerning which the Debtor "had the burden of proving the invalidity" and that the Debtor had "showed only that she had made the payments for which Home Unity had already given her credit."

As our previous discussion indicates, Home Unity has overstated the force of "presumptions" in its favor. In fact, whatever "presumption" of the validity of its claim had existed prior to the Debtor's Objection to same, this was erased by the Debtor's production of evidence challenging all of the amounts which Home Unity claimed to be due. Home Unity thus had the burden of proving the validity of all aspects of its Proof of Claim at the hearing, especially in the face of the Debtor's evidence of payments, rather than the Debtor having the burden of proving the claim's invalidity.

Still, Home Unity would have prevailed if the Debtor had in fact shown that she made only those payments credited to her by Home Unity, as Home Unity claimed, and that it was entitled to additional payments not credited or proven to have been made. Home Unity's claim was true as to the 1980 and 1981 payments, but not as to the several 1982 payments and the single unrecorded payments in 1983, 1984, and 1987 noted at page 43 supra. We also note that Home Unity made no showing of how its claim for late charges was computed. We can hardly take judicial notice of the potentially uncertain means by which such charges are computed. Cf. In re Andrews, Andrews v. Fleet Real Estate Funding Corp., 78 B.R. 78 (Bankr. E.D.Pa.1987) (Mortgagee improperly calculated late charges by basing same on the entire mortgage payment instead of only the sum of the principal and interest). Therefore, although we will allow the $750.00 claimed for Legal Fees and the $887.87 claimed for Costs to Home Unity, we will disallow the $84.59 claimed by it for Late Charges.

More significantly, we will disallow Home Unity's claim as to $1,133.39 of the mortgage payments for which the Debtor produced receipts and which Home Unity's Logs failed to reflect. We believe that the Debtor's specific evidence, by means of receipts, of particular payments for given months outweighs Home Unity's Logs, summarizing their records, which reflect that certain sums were the "payment amounts" remitted.

The specific months in which we find discrepancies in favor of the Debtor are as follows:

| MONTH | DEBTOR'S RECEIPT | HOME UNITY | CREDIT DIFFERENCE | CUMULATIVE DIFFERENCE |
|---|---|---|---|---|
| 1/82 | $176.00 | $ 86.22 | $ 89.78 | $ 89.78 |
| 2/82 | 176.00 | 85.63 | 90.37 | 180.15 |
| 3/82 | 176.00 | 85.02 | 90.98 | 271.13 |
| 4/82 | 176.00 | 84.42 | 91.58 | 362.71 |
| 6/82 | 368.60 | 164.61 | 203.99 | 566.70 |
| 7/82 | 176.00 | 75.57 | 100.43 | 667.13 |
| 8/82 | 176.00 | 125.15 | 50.85 | 717.98 |
| 10/1/82 | 182.60 | 129.41 | 53.18 | 771.16 |
| 10/22/82 | 176.00 | 129.42 | 36.58 | 807.74 |
| 5/83 | 123.76 | — | 123.76 | 931.50 |
| 5/84 | 151.36 | — | 151.36 | 1,082.86 |
| 11/87 | 176.00 | 125.47 | 50.53 | 1,133.39 |

Our computation of Home Unity's Proof of Claim is therefore as follows:

| | |
|---|---|
| Total Amount Claimed | $6,880.99 |
| (Less) Late Charges | 84.59 |
| (Less) Payment Discrepancies | 1,133.39 |
| Net Allowable Claim | $5,663.01 |

Consequently, we shall sustain the Debtor's Objections in part and allow Home Unity a secured Proof of Claim in the amount of $5,663.01 in the enclosed Order.